12-1395-ag
Richmond v. Holder

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2012

(Argued:  February 27, 2013                    Decided:  April 30, 2013)

Docket No. 12-1395-ag

_____

KEON RICHMOND,

*Petitioner*,

– v. –

ERIC H. HOLDER, JR., UNITED STATES ATTORNEY GENERAL,

*Respondent.*[*]

_____

Before: CALABRESI, POOLER, and RAGGI, *Circuit Judges*.

Petition for review of a decision by the Board of Immigration Appeals, which found Petitioner inadmissible because, the Board held, he had made a false claim to United States citizenship in order to avoid being placed in removal proceedings. *See* Immigration and Nationality Act § 212(a)(6)(C)(ii)(I), 8 U.S.C. § 1182(a)(6)(C)(ii)(I). Whether this aim counts as a "purpose or benefit under . . . Federal or State law," *id.*, and therefore a bar to

---

[*] The Clerk of Court is respectfully directed to amend the official caption in this case to conform with the caption above.

admissibility, is a question neither we nor the Board has authoritatively answered. We remand so that the Board may do so in the first instance.

RYAN A. MUENNICH, Muennich & Bussard, LLP, New York, N.Y., *for Petitioner*.

KATHERINE A. SMITH, Trial Attorney, Office of Immigration Litigation (Stuart F. Delery, Acting Assistant Attorney General, Civil Division, and Douglas E. Ginsburg, Assistant Director, Office of Immigration Litigation, *on the brief*), U.S. Department of Justice, Civil Division, Washington, D.C., *for Respondent*.

CALABRESI, *Circuit Judge*:

Petitioner Keon Richmond, a native and citizen of Trinidad and Tobago, remained in the United States beyond the term of the tourist visa which allowed his initial entry here in May 2001. When removal proceedings were brought against him, Richmond conceded removability but sought an adjustment of status—and thereby relief from removal—on the basis of his marriage to a United States citizen. The immigration judge and, subsequently, the Board of Immigration Appeals ("BIA") found Richmond ineligible for adjustment of status because, while incarcerated some years earlier, Richmond had lied to Department of Homeland Security officers about his citizenship status. This lie, the BIA held, was made in order to avoid being placed in removal proceedings. As such, according to the immigration judge and the BIA, it triggered the inadmissibility provision of Immigration and Nationality Act ("INA") § 212(a)(6)(C)(ii)(I), which bars "[a]ny alien who falsely represents . . . himself or herself to be a citizen of the United States for any purpose or benefit under

–2–

[the Immigration and Nationality] Act . . . or any other Federal or State law." 8 U.S.C. § 1182(a)(6)(C)(ii)(I).

Neither the BIA nor this Court has previously issued a precedential opinion defining what counts as a "purpose or benefit" under federal or state law. We therefore vacate the BIA's decision in this case and remand so that the BIA may determine in the first instance the scope of conduct encompassed by § 212(a)(6)(C)(ii)(I).

## BACKGROUND

Keon Richmond first entered the United States on May 3, 2001 using a non-immigrant visa, which he admits to overstaying. In September 2003, Richmond was arrested in New York and charged with second degree assault and resisting arrest. He was convicted in April 2005 and, the following month, sentenced to two years in prison. His conviction was overturned, however, by the New York State Appellate Division in January 2007.

While Richmond was imprisoned, the Ulster County Correctional Facility reported him to the Department of Homeland Security as an inmate "believed to be an alien." On May 27 and June 1, 2005, agents from Immigrations and Customs Enforcement ("ICE") visited Richmond in prison, interviewed him about his citizenship, and completed two I-215 affidavit forms on which Richmond swore that he was a United States citizen, born in Brooklyn, New York. The second agent to question Richmond later testified that he had advised Richmond to tell the truth, warning that whereas Richmond then faced, at worst, deportation, a lie about his citizenship could result in criminal prosecution.

In fact, a criminal prosecution did ensue: after authorities obtained Richmond's Trinidadian passport and birth certificate, Richmond was indicted and arraigned in December 2005 for violating 18 U.S.C. § 911 ("Whoever falsely and willfully represents himself to be a citizen of the United Sates shall be fined . . . or imprisoned not more than three years, or both."). In November 2006, the criminal charges were dropped in the "interests of justice," and Richmond was referred to DHS for removal proceedings, which were initiated the following month.

In proceedings before the immigration judge ("IJ"), Richmond admitted that he was a native and citizen of Trinidad and Tobago and conceded removability for overstaying his visa, but sought an adjustment of status based on his marriage to a U.S. citizen. Richmond's adjustment petition ran aground, however, on the shoals of INA § 212, which makes inadmissible, *inter alios*, "[a]ny alien who falsely represents, or has falsely represented, himself or herself to be a citizen of the United States for any purpose or benefit under this Act (including section 274A) or any other Federal or State law."[1] INA § 212(a)(6)(C)(ii)(I), 8 U.S.C. § 1182(a)(6)(C)(ii)(I). The IJ refused to credit Richmond's testimony that he believed, at the time he was questioned, that he had been born in the United States and was a citizen. Though Richmond claimed to have been told this by his mother, he produced no evidence from her to support his claim. Nor did Richmond explain how he could have gone through the process of obtaining a nonimmigrant visa to enter the United States at age nineteen without realizing that he was not a U.S. citizen. Having found Richmond's citizenship claims to have been knowingly false, the IJ further determined that

---

[1] INA § 274A proscribes the employment of unauthorized aliens. *See* 8 U.S.C. § 1324a.

his misrepresentations were meant to give him a "'get out of jail free card' in terms of Immigration law"—something the IJ concluded "must be considered as a type of benefit" under the INA.

The BIA agreed. In a single-member, non-precedential opinion issued March 13, 2012, the BIA found: (1) that although § 212(a)(6)(C)(ii)(I) does not require *knowing* falsity, someone who claims in good faith to be a U.S. citizen is not making that claim for any legal "purpose or benefit"; (2) that the IJ's determination that Richmond's claim to citizenship was not made in good faith survives clear error review; and (3) that "a false claim to United States citizenship made for the purpose of avoiding being placed into removal proceedings is made 'for any purpose or benefit under the Act' and therefore renders [Richmond] inadmissible."[2]

Richmond timely sought our review of each of these three conclusions.

**DISCUSSION**

We have jurisdiction to examine, as a question of law, a petitioner's statutory eligibility for relief from removal. *See* 8 U.S.C. § 1252(a)(2)(D); *Sepulveda v. Gonzales*, 407 F.3d 59, 62-63 (2d Cir. 2005). "[F]or the sake of completeness," we consider both the IJ's decision and that of the BIA, whose "brief opinion closely tracks the IJ's reasoning." *Lecaj v. Holder*, 616 F.3d 111, 114 (2d Cir. 2010). Factual findings, including credibility determinations, are reviewed under the substantial evidence standard. *See* 8 U.S.C.

---

[2] Below, Richmond moved to suppress affidavits obtained by the ICE agents who interviewed him in prison, but both the IJ and BIA refused to suppress the affidavits, and Richmond has not appealed their decisions.

§ 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."); *Yun-Zui Guan v. Gonzales*, 432 F.3d 391, 394 (2d Cir. 2005) (per curiam). Questions of law we examine *de novo*, at least in the absence of an authoritative agency interpretation of an ambiguous statute. *See Adams v. Holder*, 692 F.3d 91, 95 (2d Cir. 2012).

To begin, Richmond rejects the good faith exception that the BIA read into § 212(a)(6)(C)(ii)(I). *See In re Keon Richmond*, No. A097 519 056, at 2 n.2 (B.I.A. Mar. 13, 2012) ("If the respondent genuinely believed he was a United States citizen, communicating that sentiment to DHS officers when queried as to his citizenship would have been a false claim to United States citizenship, because it was not accurate, but it would not have been made 'for any purpose or benefit under the Act.'"). Richmond's position is perplexing, as the scienter requirement which the BIA found within the statute's "for any benefit or purpose" clause would seem to redound only to his benefit. Richmond's claim to U.S. citizenship was undeniably false; the question he raised below is whether he knew that at the time.[3]

We need not decide whether § 212(a)(6)(C)(ii)(I) exempts the genuinely deluded, however, for even if it does, we cannot say that Richmond falls into that category. The IJ found otherwise, refusing to credit Richmond's claim that he was confused about his citizenship status when he spoke to the ICE agents in 2005. The IJ's credibility

---

[3] As the BIA correctly noted, INA § 212(a)(6)(C)(ii)(II) provides a good faith exception to § 212(a)(6)(C)(ii)(I), but only for persons with U.S. citizen parents who began living in the United States before turning sixteen. The negative pregnant of this exception is clear: for aliens, like Richmond, who fail to meet those requirements, false citizenship claims need not be knowing to run afoul of § 212(a)(6)(C)(ii)(I).

determination rested on substantial evidence—including inconsistencies in the record, implausibilities in Richmond's testimony, and unexplained gaps in the evidence he presented—and we have no reason to second-guess that determination.

The success of Richmond's petition must turn, therefore, on whether Richmond made his false claim to U.S. citizenship "for any purpose or benefit under" state or federal law. The question to be decided is how broadly § 212(a)(6)(C)(ii)(I)'s "purpose or benefit" requirement is to be read.[4]

One thing is clear: the statutory language cannot be read so broadly that it fails to exclude anything. There must be some situation in which an alien falsely represents himself to be a citizen for some purpose that does *not* fall under federal or state law. Otherwise, the "for any purpose or benefit" requirement of § 212(a)(6)(C)(ii)(I) would become surplusage— "a result that is to be avoided in statutory construction." *Filler v. Hanvit Bank*, 378 F.3d 213, 220 (2d Cir. 2004) (citing *Babbit v. Sweet Home Chapter of Cmtys. for a Great Or.*, 515 U.S. 687, 698 (1995)).

The government points to two cases in other circuits in which false representations of citizenship *were* found to lie outside the statute's scope. In the first, *Hassan v. Holder*, a resident alien falsely claimed to be a U.S. citizen on two Small Business Administration loan applications, even though "he did not know if his citizenship status would affect his loan status" and, in fact, he had previously been approved for loans without resorting to falsehoods. 604 F.3d 915, 920 (6th Cir. 2010). The Sixth Circuit held that the government

---

[4] We have previously held that applying for a United States passport, *see Rodriguez v. Gonzales*, 451 F.3d 60 (2d Cir. 2006), and filing an I-9 employment eligibility form, *see Crocock v. Holder*, 670 F.3d 400 (2d Cir. 2012) (per curiam), both count as a "purpose or benefit" triggering inadmissibility.

had not "attempted to show the 'purpose or benefit'" the petitioner received, either by demonstrating "how, if at all, [the petitioner's] immigration status would affect the loan application" or by proving that his subjective purpose, even if misguided, was to affect the application. *Id.* at 928-29.[5] In other words, the court decided *Hassan* based on the lack of evidence presented. The Sixth Circuit did not hold that obtaining a Small Business Administration loan cannot count as a "purpose or benefit," but only that the government, which had the burden of proof in *Hassan*, *id.* at 928, did not show how the "purpose or benefit" requirement had been met in that case.

The second case, *Castro v. Holder*, comes from the Third Circuit, which held that an alien who—while being arrested by police officers in Patterson, New Jersey—falsely claimed to have been born in Puerto Rico rather than Costa Rica did not do so for a "purpose or benefit" as defined by § 212(a)(6)(C)(ii)(I). 671 F.3d 356 (3d Cir. 2012). Castro, the court held, "was not seeking a public benefit from the Paterson police, in the sense of a benefit created by law and administered by the police." *Id.* at 370. The court continued:

> At most . . . the 'purpose or benefit' imputed by the BIA to Castro was to minimize the risk that the police would report his arrest to DHS. Minimizing that risk is not, in and of itself, a legal benefit. And, in fact, there was no risk. . . . [T]he Paterson police . . . had no interest in Castro's citizenship status.

*Id.*

Like the Sixth Circuit in *Hassan*, the Third Circuit in *Castro* left open the important question of whether the presence of a "purpose or benefit" is determined

---

[5] In *Hassan*, the Sixth Circuit was interpreting INA § 237(a)(3)(D)(i), 8 U.S.C. § 1227(a)(3)(D)(i), which mirrors the language of § 212(a)(6)(C)(ii)(I) in regard to deportability rather than inadmissibility.

objectively—based on whether citizenship status would *actually* affect, say, a loan application or a routine brush with local law enforcement—or subjectively, based on the effect that a non-citizen *intends* his or her citizenship claim to have. Thus it remains unclear whether Castro was saved from inadmissibility because local law enforcement did not actually care about his citizenship, or because even Castro's intended goal—minimizing his risk of deportation—did not constitute a "purpose or benefit" under § 212(a)(6)(C)(ii)(I). *Castro* could also be read to require that *both* tests—objective *and* subjective—be satisfied. In that case, aliens would trigger the admissibility bar only if they lied about citizenship with the *reasonable intention* of achieving some purpose or benefit under state or federal law.

We raise these undecided issues not by way of criticism, but simply to highlight the ambiguities that remain even after other courts' thoughtful attempts to delimit the "purpose or benefit" requirement of § 212(a)(6)(C)(ii)(I). Neither of the cases the government cites makes clear the precise basis on which certain kinds of misrepresentations can be said to fall outside the requirement's scope. The risk therefore remains that, in the absence of some clear limitation on what it encompasses, the "purpose or benefit" clause will itself serve no purpose, and provide no benefit, within the INA.

Richmond, for his part, proposes a reading of "purpose or benefit" stringent enough to keep a much larger class of misrepresentations from triggering inadmissibility. He argues that the statutory language applies only to aliens seeking positive benefits, like a passport or job, not to those trying to avoid negative consequences such as deportation. While "benefit" may well be read this way, it is hardly clear that "purpose" should be as well. Avoiding removal, like avoiding taxes or the draft—but unlike avoiding the dentist or

the flu—would certainly seem to be the kind of purpose that only exists under state or federal law. Someone who lies to achieve one of the former purposes succeeds, if at all, because the law (for example) makes citizens not deportable, charitable donations not taxable, and women and children not subject to Selective Service registration.

In the end, neither the parties, nor the BIA, nor the courts of appeals have offered a reading of "purpose or benefit" which convincingly resolves the ambiguity of that phrase. As we have said before in a similar situation, "we cannot comfortably ascertain the proper outcome in this case in the absence of a set of standards" to use in applying the statute; yet "were we to generate standards ourselves, we would be forced to start essentially from scratch." *Yuanliang Liu v. Gonzales*, 455 F.3d 106, 116 (2d Cir. 2006). Rather than doing so, the better practice in situations like this is to remand to the BIA.

"In *Yuanliang Liu*, we set forth several reasons for remanding as a matter of discretion, including: (1) 'Insufficient agency attention' to the issue; (2) 'National uniformity'; (3) 'Statutory ambiguity' as well as ambiguity in the regulations; (4) 'Dearth of circuit law' on the issue; (5) The '[h]igh volume' of similar cases; and (6) 'Importance of the issue.'" *Llanos-Fernandez v. Mukasey*, 535 F.3d 79, 86 (2d Cir. 2008) (quoting *Yuanliang Liu*, 455 F.3d at 116–18). We find that these reasons are all present in this case. On remand, the BIA will have the opportunity to explain in the first instance what constitutes a "purpose or benefit" under INA § 212(a)(6)(C)(ii)(I) and whether attempting to avoid removal proceedings counts as one such purpose.

## CONCLUSION

For the foregoing reasons, we GRANT Richmond's petition for review, VACATE the BIA's decision of March 13, 2012, and REMAND this case to the BIA for proceedings consistent with this opinion.