**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 16a0643n.06

No. 16-3313

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Dec 01, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JESUS DE REFUGIO VEGA, | ) | |
| | ) | |
| **Petitioner,** | ) | ON PETITION FOR REVIEW |
| | ) | OF A FINAL ORDER OF THE |
| v. | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| LORETTA E. LYNCH, United States Attorney | ) | |
| General | ) | |
| | ) | **OPINION** |
| **Respondent.** | ) | |
| | ) | |

Before: MOORE and CLAY, Circuit Judges; HOOD, District Judge.[*]

**KAREN NELSON MOORE, Circuit Judge.** In this immigration case, Petitioner Jesus de Refugio Vega seeks review of the Board of Immigration Appeals' ("BIA") decision affirming an immigration judge's ("IJ") order of removal. Vega argues that, contrary to the IJ's findings, he made no misrepresentations regarding his citizenship and that, at a minimum, he did not make misrepresentations for any purpose or benefit that would constitute grounds for removal. Because the BIA's analysis is incomplete under its precedent, we **GRANT** Vega's petition for review. Accordingly, we **VACATE** the BIA's decision and **REMAND** the case for further proceedings consistent with this opinion.

---

[*]The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

## I. BACKGROUND

Vega is a native and citizen of Mexico, A.R. at 219 (Form I-485 at 1); *id.* at 333 (Notice to Appear at 3), who entered the United States in June or July 2001 from Matamoros, Mexico, *id.* at 86 (June 3, 2015 Hr'g at 13). When he entered the United States, he did not possess or present a nonimmigrant visa, border crossing card, or other document valid for his admission into the country. *Id.* at 238 (Additional Charges of Inadmissibility/Deportability). He has a wife and two children, all of whom are citizens of the United States. *Id.* at 106 (July 15, 2015 Hr'g at 31).

On February 9, 2015, following Vega's conviction for misuse of a Social Security number and aggravated identity theft, *id.* at 261 (Apr. 18, 2014 Judgment at 1), the Government served Vega with a notice to appear, claiming that he was removable from the United States. *Id.* at 333 (Notice to Appear at 3). The IJ issued an initial order finding Vega not removable under the original charges, *id.* at 283 (July 22, 2015 Order at 1), after which the Government brought additional charges against Vega, *id.* at 238–39 (July 24, 2015 Form I-261); *id.* at 231–32 (Aug. 5, 2015 Form I-261). First, the Government charged that Vega was removable because he entered the United States without proper documentation in violation of 8 U.S.C. § 1227(a)(1)(A), *id.* at 238 (July 24, 2015 Form I-261), and because he was convicted of a crime involving moral turpitude in violation of 8 U.S.C. § 1227(a)(2)(A)(i), *id.* at 231 (Aug. 5, 2015 Form I-261). Vega conceded that he was removable under these sections.[1]  *Id.* at 211–12 (Resp't's Written

---

[1] It is far from clear whether Vega, who appears to have used a false birth certificate and Social Security number so that he could hold a job, *see* A.R. at 164 (Oct. 7, 2015 Hr'g at 86), was actually convicted of a crime involving moral turpitude. Although we have previously held

Pleadings at 2–3). In addition, the Government charged that Vega was removable because he falsely represented himself to be a citizen of the United States for the purpose of obtaining an Ohio driver's license in violation of 8 U.S.C. § 1227(a)(3)(D)(i). A.R. at 231 (Aug. 5, 2015 Form I-261). Vega denied that he was removable under this section.[2] *Id.* at 212 (Resp't's Written Pleadings at 3).

To support its charge of false representation, the Government put forth various documents that Vega submitted to the Ohio Bureau of Motor Vehicles ("BMV") to obtain a driver's license. The first document, which was for a driver's license renewal, is dated both July 14, 2012 and July 14, 2013 and is signed "Abelardo Buenrostro" below the words "By signing below I agree to and attest that all the above is true and accurate." *Id.* at 233–34 (Driver's License Application). Near the top of the document are the words, "**U.S. Citizen:** YES." *Id.* at

that similar conduct is a crime of moral turpitude, *see Serrato-Soto v. Holder*, 570 F.3d 686, 691 (6th Cir. 2009), forthcoming reconsideration by the BIA may produce a contrary result. *See Arias v. Lynch*, 834 F.3d 823, 830 (7th Cir. 2016) (instructing the BIA to determine the "appropriate legal framework for judging moral turpitude"); *id.* (Posner, J., concurring) ("It is preposterous that that stale, antiquated, and, worse, meaningless phrase should continue to be a part of American law."); *see also Ruiz-Lopez v. Holder*, 682 F.3d 513, 518 (6th Cir. 2012) (observing that the inherent ambiguity of "moral turpitude" and "the BIA's method of case-by-case adjudication[] necessarily involves a somewhat unsettled issue").

[2]Vega's concession of removability under § 1227(a)(1)(A) and § 1227(a)(2)(A)(i) would not preclude him from seeking an Adjustment of Status and Waiver of Grounds for Admissibility. In fact, Vega submitted a Form I-485 and Form I-601 requesting such relief. However, Vega would be permanently barred from reentering the United States if he is found removable under § 1227(a)(3)(D)(i). *See* 8 U.S.C. § 1182(a)(6)(C)(ii)(I) (2016) ("Any alien who falsely represents, or has falsely represented, himself or herself to be a citizen of the United States for any purpose or benefit under this chapter (including section 1324a of this title) or any other Federal or State law is inadmissible."). Therefore, as the Government points out, there is a live case or controversy regarding Vega's § 1227(a)(3)(D)(i) charge.

233 (Driver's License Application). The second document, which was for a driver's license duplicate, is dated August 11, 2012 and is signed "Abelardo B." below the words "By signing below I agree to and attest that all the above is true and accurate." *Id.* at 235–36 (Driver's License Application). Once again, near the top of the document are the words, "**U.S. Citizen: YES.**" *Id.* at 235 (Driver's License Application). Another page, which contains the same application and agency numbers as the duplicate driver's license application, is signed "Abelardo B." below the words "**WARNING: IT IS A CRIMINAL OFFENSE TO GIVE FALSE INFORMATION ON THIS APPLICATION.** Under penalty of law, I affirm that the above information is true to the best of my knowledge and belief." *Id.* at 237 (Driver's License Application). A box next to "US CITIZEN" is checked, whereas the boxes next to "PERMANENT RESIDENT" and "TEMPORARY RESIDENT" are not checked. *Id.* (Driver's License Application). Various items of biographical information, including the applicant's name (Abelardo Buenrostro), hair color (brown), and eye color (brown), are handwritten on the form. *Id.* (Driver's License Application).

Vega testified at a hearing before the IJ that, after he entered the United States, his brother gave him a birth certificate with the name "Abelardo Buenrostro" along with a Social Security number. *Id.* at 163 (Oct. 7, 2015 Hr'g at 85). Vega explained that he used that birth certificate at the BMV in 2002, 2006, and 2011 to obtain proof of identification for work. *Id.* at 164–66 (Oct. 7, 2015 Hr'g at 86–88). He stated that in 2002, when he first used the birth certificate to obtain an Ohio identification card, he could not read or write in English. *Id.* at 168

(Oct. 7, 2015 Hr'g at 90). When asked whether he ever learned to read or write in English, Vega responded through an interpreter, "not fully" but that "lately, since I've been in jail, I've been reading and writing and learning how to read and write." *Id.* Vega was arrested in 2013. *Id.* at 166 (Oct. 7, 2015 Hr'g at 88). Later in his testimony, Vega stated that as of August 11, 2012, he could read and write some English, but "not perfectly"—"Just the basic information, name and address and just normal things." *Id.* at 175 (Oct. 7, 2015 Hr'g at 97).

In addition, Vega confirmed that he signed the various driver's license applications, but he testified that he did not read the application before signing and that he was unaware that it stated that he was a U.S. citizen. *Id.* at 171–73 (Oct. 7, 2015 Hr'g at 93–95). He also testified that on one page, he handwrote his address, the social security number, and his birthdate, but that he did not check the other boxes, including the one marked "US CITIZEN." *Id.* at 175 (Oct. 7, 2015 Hr'g at 97). He testified that he could read and write "basic information" in English, such as names, addresses, colors, and "normal things." *Id.* at 175–76 (Oct. 7, 2015 Hr'g at 97–98). Finally, he testified that he could read the term "US CITIZEN," but that he "didn't know what it meant." *Id.* at 177 (Oct. 7, 2015 Hr'g at 99).

Ultimately, the IJ held that Vega was removable for falsely representing himself to be a citizen of the United States for the purpose of obtaining a driver's license when he applied for a driver's license on July 14, 2012 and on August 11, 2012, thereby violating 8 U.S.C. § 1227(a)(3)(D). A.R. at 67–68 (IJ Mem. & Order at 9–10). In reaching this decision, the IJ found that Vega "did not testify credibly overall." *Id.* at 66 (IJ Mem. & Order at 8). The IJ also

reasoned that Vega's "immigration status would clearly have a direct effect on his driver's license application" and that he "could not have obtained a driver's license if he accurately conveyed his immigration status." *Id.* at 68 (IJ Mem. & Order at 10).

The BIA dismissed Vega's appeal of the IJ's order. *Id.* at 5 (BIA Dec. at 3). Observing that the IJ's credibility determination was not clearly erroneous, the BIA held that the IJ "did not clearly err in finding that [Vega] falsely represented himself to be a United States citizen on his Ohio driver license applications." *Id.* at 4 (BIA Dec. at 2). Turning "to the separate legal question of whether that representation was made 'for any purpose or benefit under . . . State law,'" *id.* (quoting 8 U.S.C. § 1227(a)(3)(D)(i)), the BIA further reasoned that Vega's "immigration status *was* relevant to his eligibility for an Ohio driver license," *id.*, and that he "thus claimed United States citizenship for the 'purpose' of demonstrating his Ohio 'resident' status, a prerequisite to his receiving a 'benefit' under Ohio law—i.e., a driver license," *id.* at 5 (BIA Dec. at 3) (quoting 8 U.S.C. § 1227(a)(3)(D)(i); Ohio Admin. Code 4501:1-1-35(A) (2016)). The BIA stated, "That is sufficient to render him removable under [§ 1227(a)(3)(D)(i)]." *Id.* Finally, the BIA held that the IJ "committed no clear error" in finding that "[Vega's] purpose in claiming United States citizenship was to procure . . . a benefit [under state law]." *Id.* Vega has petitioned for review of the BIA's decision. We have jurisdiction over his petition pursuant to 8 U.S.C. § 1252(a)(5).

## II. DISCUSSION

Vega has raised two issues in his petition:  first, that he did not falsely represent his citizenship, and second, in the alternative, that any such false representations were not made for an impermissible purpose or benefit.  *See* Pet'r's Br. at 16.  For the reasons that follow, the BIA's treatment of these issues is incomplete following *Richmond*, 26 I. & N. Dec. 779 (2016), and we therefore remand the case.

## A.  Standard of Review

"Where the BIA reviews the immigration judge's decision and issues a separate opinion, rather than summarily affirming the immigration judge's decision, we review the BIA's decision as the final agency determination."  *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009).  If the BIA adopts the IJ's reasoning, we also review the IJ's decision.  *Id.*  "Questions of law are reviewed de novo, but substantial deference is given to the BIA's interpretation of the INA and accompanying regulations."  *Id.*  We review factual findings made by the BIA and IJ under the substantial-evidence standard:  "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  *See* 8 U.S.C. § 1252(b)(4)(B) (2012); *Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004) ("Courts have found that § 1252(b)(4)(B) basically codifies the Supreme Court's substantial evidence standard.").  However, "[w]hen the BIA does not fully consider an issue . . . a reviewing court 'is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed.'  Rather, 'the proper course, except in rare circumstances, is to remand to the [BIA] for additional investigation

or explanation.'" *Bi Xia Qu v. Holder*, 618 F.3d 602, 609 (6th Cir. 2010) (quoting *Gonzales v. Thomas*, 547 U.S. 183, 186 (2006)); *Immigration & Naturalization Serv. v. Orlando Ventura*, 537 U.S. 12, 16–17 (2002) ("This principle has obvious importance in the immigration context."); *see also Yuanliang Liu v. U.S. Dep't of Justice*, 455 F.3d 106, 116–17 (2d Cir. 2006) (noting six reasons warranting remand to the BIA).

## B. Applicable Law

The Government sought to remove Vega pursuant to, among other sections of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(3)(D)(i):  "Any alien who falsely represents, or has falsely represented, himself to be a citizen of the United States for any purpose or benefit under this chapter (including section 1324a of this title) or any Federal or State law is deportable."  The BIA's standard of review regarding the IJ's factual findings, including credibility, is clear error.  *See* 8 C.F.R. § 1003.1(d)(3)(i) (2016).  The BIA reviews de novo questions of law, discretion, and judgment.  *Id.* § 1003.1(d)(3)(ii).

## C. False Representation of Citizenship for any Purpose or Benefit under any Federal or State Law

Vega argues that he did not make false representations regarding his citizenship and that, in the alternative, he did not do so "for a 'benefit' as described by Sixth Circuit precedent." *See* Pet'r's Br. at 16.  The Government argues that "no record evidence compels reversal of the agency's determination that [Vega] is removable under 8 U.S.C. § 1227(a)(3)(D)."  Resp't's Br. at 18.  In support, it argues that the BIA's decision comports with a more recent decision, *Richmond*, 26 I. & N. Dec. at 781–82, that "interpret[ed] the meaning and scope of the phrase

'for the purpose or benefit under this Act . . . or any other Federal or State law' under 8 U.S.C. § 1182(a)(6)(C)(ii)(I)." *See* Resp't's Br. at 22 (citation omitted). In his reply brief, Vega "request[s] his case be remanded to the agency to apply the new frame work [sic] delineated in *RICHMOND*." Reply Br. at 4. Because *Richmond* set forth a new standard that affects our review, we agree that this case should be remanded so that the BIA can more fully consider the issues that Vega has raised in his petition.

*Richmond*, which was issued after Vega filed his opening brief and before the Government filed its brief, set forth a methodology for "purpose or benefit" determinations. The BIA observed that there are three components to § 1182(a)(6)(C)(ii)(I), which mirrors the language of 8 U.S.C. § 1227(a)(3)(D)(i): "An alien is inadmissible under this provision if he or she: (1) 'falsely represents, or has falsely represented, himself or herself to be a citizen of the United States'; (2) 'for any purpose or benefit'; (3) 'under th[e] Act . . . or any other Federal or State law.'" *Richmond*, 26 I. & N. Dec. at 783 (citation omitted). In addition, "the scope of [§ 1182(a)(6)(C)(ii)(I)] is limited to false claims to United States citizenship that meet two requirements. First, the Immigration Judge must find direct or circumstantial evidence demonstrating that the false claim was made with the subjective intent of achieving a purpose or obtaining a benefit under the Act or any other Federal or State law. Second, the presence of a purpose or benefit must be determined objectively—that is, the United States citizenship must actually affect or matter to the purpose or benefit sought." *Id.* at 786–87. Significantly, this partition between subjective intent and objective purpose or benefit comports with the text of

§ 1182(a)(6)(C)(ii)(I) and our prior case law, *see, e.g.*, *Hassan v. Holder*, 604 F.3d 915, 928–29 (6th Cir. 2010) (holding that there was no "purpose or benefit" because a misrepresentation of citizenship "would have no effect on the loan" and because the petitioner "did not subjectively believe that his immigration status affected his application").

When the BIA has not fully considered a part of the analysis, we are "not generally empowered to conduct a *de novo* inquiry into" it. *See Bi Xia Qu*, 618 F.3d at 609 (quoting *Thomas*, 547 U.S. at 186). The BIA did not have the benefit of the *Richmond* analysis in this case. Instead of addressing each of the components and requirements set forth in *Richmond*, the BIA addressed the general questions of whether the IJ "clearly err[ed] in finding that [Vega] falsely represented himself to be a United States citizen on his Ohio driver license applications" and "whether that representation was made 'for any purpose or benefit under . . . State law.'" A.R. at 4 (BIA Dec. at 2) (citation omitted). In addition, both parties have cited *Richmond* to support their respective positions that the BIA's decision should be affirmed or reversed. *See* Resp't's Br. at 21–23, 26; Reply Br. at 4–10. To weigh in on their arguments before the BIA has had an opportunity to address them would "intrude upon the domain which Congress has exclusively entrusted to an administrative agency." *See Orlando Ventura*, 537 U.S. at 16 (internal quotation marks omitted). In light of the *Richmond* standard, which we would have to apply for the first time if we addressed the merits of Vega's petition, "the proper course . . . is to remand to the [BIA] for additional investigation or explanation." *See Bi Xia Qu*, 618 F.3d at 609 (quoting *Thomas*, 547 U.S. at 186).

Of course, it may be that *Richmond* is inapplicable in this case. As previously mentioned, and as the BIA itself observed, § 1182(a)(6)(C)(ii)(I) "mirrors" the language of § 1227(a)(3)(D)(i). *Richmond*, 26 I. & N. Dec. at 786 n.7. Nevertheless, whereas § 1182(a)(6)(C)(ii)(I) renders an alien inadmissible, § 1227(a)(3)(D)(i) renders an alien deportable (i.e., removable). The legislative history of these sections, among other canons of statutory construction, may be sufficiently different that a different analysis is appropriate. Therefore, another issue for the BIA to consider is whether the *Richmond* analysis applies to § 1227(a)(3)(D)(i) cases.

## III. CONCLUSION

For the foregoing reasons, we **GRANT** Vega's petition for review, **VACATE** the BIA's decision, and **REMAND** the case for further proceedings consistent with this opinion.