[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-11551
_____

Agency No. A095-418-603

GLADYS TEYE,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(June 28, 2018)

Before MARTIN, JULIE CARNES, and O'SCANNLAIN,[*] Circuit Judges.

PER CURIAM:

_____

[*] Honorable Diarmuid F. O'Scannlain, United States Circuit Judge for the Ninth Circuit, sitting by designation.

Gladys Teye petitions this Court for review of the order by the Board of Immigration Appeals ("BIA") affirming the pretermission of her application for adjustment of her immigration status. The government argues Teye did not qualify for adjustment of her status, as a matter of law, because she falsely claimed to be a U.S. citizen on her 2008 application for a Georgia driver's license.

I.

Teye, of Ghana, entered the United States in January 1999 and overstayed her visitor visa. She later married a U.S. citizen and in January 2003 applied for adjustment of status based on her marriage. While her adjustment-of-status application was pending, on January 26, 2008, Teye applied for a Georgia driver's license. On the application, she checked "yes" when asked if she was a U.S. citizen. She got a license with an expiration date of March 15, 2013.

On January 12, 2009, Teye's adjustment-of-status application was denied because she couldn't prove the "bona fides" of her marriage. The Department of Homeland Security then issued a notice charging her with removability. In early 2013, Teye acknowledged to an immigration judge ("IJ") that she was removable for overstaying her visa. However, the IJ gave her time to file a second application for adjustment of status based on her daughter's upcoming naturalization. Once her daughter became a naturalized U.S. citizen in November, Teye filed her second adjustment-of-status application.

2

In December 2015, the government moved to pretermit Teye's second application. The government argued Teye's false claim to U.S. citizenship on her 2008 Georgia driver's license application rendered her ineligible for adjustment of status as a matter of law. Teye objected. She argued she didn't need U.S. citizenship to get a license under Georgia law, and that her then-pending application for adjustment of status and work permit gave her lawful status sufficient to get a license.

The IJ granted the government's motion to pretermit. The IJ first found Teye failed to show "her false claim to citizenship was not made 'knowingly.'" The IJ next determined that even if Teye's work permit was enough to give her lawful status, then-binding Georgia law would have allowed her only a temporary license until her work permit expired on February 8, 2008. That means if Teye had relied on her work permit, she would have qualified for a license valid for only two weeks, rather than the five-year license she received. Finally, the IJ found Teye failed to rebut the government's showing that she made a false claim in order to receive a Georgia driver's license.

Teye appealed the IJ's decision to the BIA. She argued the IJ erred by failing to consider her then-pending application for adjustment of status. Teye said her pending application for adjustment of status meant she had "lawful status" as defined under federal law—specifically the REAL ID Act of 2005 and related

3

federal regulations and state laws. She argued that so long as her application remained pending, she was eligible for a license "in perpetuity."

The BIA dismissed Teye's appeal. The BIA concluded the laws Teye relied on were not in effect when she applied for a driver's license, so they could not support her claim that her pending application for adjustment of immigration status was enough to establish lawful status. The BIA noted that any lawful status derived from Teye's application entitled her to no more than a temporary license under then-binding Georgia law, while her false claim to U.S. citizenship allowed her to get a five-year license.

Teye then filed the petition for review we consider here.

## II.

We review only the BIA's decision unless the BIA expressly adopts the IJ's opinion and reasoning or agrees with the IJ's findings, in which case we will review the IJ's decision as well. Ayala v. U.S. Att'y Gen., 605 F.3d 941, 947–48 (11th Cir. 2010); Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). In cases where a petitioner is seeking and is denied discretionary relief, including adjustment of status, courts lack jurisdiction to review findings of fact. 8 U.S.C. § 1252(a)(2)(B)(i); Jean-Pierre v. U.S. Att'y Gen., 500 F.3d 1315, 1320 (11th Cir. 2007). However, this Court does have jurisdiction to review constitutional claims or questions of law, which we review de novo. 8 U.S.C. § 1252(a)(2)(D); Jeune v.

4

U.S. Att'y Gen., 810 F.3d 792, 799 (11th Cir. 2016). Whether a foreign national meets the statutory criteria for discretionary relief, including adjustment of status, is a legal question. See Mejia Rodriguez v. U.S. Dep't of Homeland Sec., 562 F.3d 1137, 1144–45 (11th Cir. 2009) (per curiam).

When courts interpret a statute administered by an agency, Chevron[1] provides a two-step process. "First, if congressional purpose is clear, then interpreting courts and administrative agencies must give effect to the unambiguously expressed intent of Congress." Cadet v. Bulger, 377 F.3d 1173, 1185 (11th Cir. 2004) (quotations omitted). But when a statute is silent or ambiguous, and the agency has interpreted it, then the court must determine whether that interpretation is "reasonable" or "arbitrary, capricious, or manifestly contrary to the statute." Id. (quotations omitted). If the interpretation is reasonable, it is controlling and the court must defer to it. Id. Precedential, three-member decisions of the BIA interpreting language from the Immigration and Nationality Act ("INA") are entitled to Chevron deference. See INS v. Aguirre-Aguirre, 526 U.S. 415, 425, 119 S. Ct. 1439, 1445–46 (1999) (holding "the BIA should be accorded Chevron deference"); Quinchia v. U.S. Att'y Gen., 552 F.3d 1255, 1258–59 (11th Cir. 2008) (determining Chevron deference applied to

---

[1] Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 104 S. Ct. 2778 (1984).

precedential, three-member BIA decisions but not to single-judge BIA decisions that did not rely on existing BIA or federal court precedential decisions).

## III.

Under the INA, a foreign national who lawfully entered the United States may apply for her status to be adjusted to that of a permanent resident. 8 U.S.C. § 1255(a). In order to get the status adjustment, the foreign national must show she is "clearly and beyond doubt" admissible to the United States for permanent residence and not inadmissible for one of the reasons set out in 8 U.S.C. § 1182. Id. §§ 1229a(c)(2)(A), 1255(a)(2). "Any alien who falsely represents, or has falsely represented, himself or herself to be a citizen of the United States for any purpose or benefit under this chapter . . . or any other Federal or State law is inadmissible." Id. § 1182(a)(6)(C)(ii)(I).

The government argues Teye falsely claimed U.S. citizenship to get a benefit under Georgia law, so that, as a matter of law, she was inadmissible under § 1182(a)(6)(C)(ii)(I). We have jurisdiction to review this question. See Mejia Rodriguez, 562 F.3d at 1144–45. Since the BIA did not expressly adopt the IJ's findings or decision, our review is limited to the decision made by the BIA. See Ayala, 605 F.3d at 947–48; Al Najjar, 257 F.3d at 1284.

Section 1182(a)(6)(C)(ii)(I) requires (1) a false claim to U.S. citizenship; (2) "for any purpose or benefit"; (3) that exists under federal or state law. Teye

6

does not contest that her claim of U.S. citizenship was false. Her argument to the BIA, and now in this appeal, is that her claim was not made "for any purpose or benefit" under federal or state law. The BIA set out a standard for determining whether a false claim has met the statute's "for any purpose or benefit" clause in Matter of Richmond, 26 I. & N. Dec. 779 (BIA 2016), which is a precedential, three-member decision. Because both Teye and the government apply the Richmond standard without discussing whether § 1182(a)(6)(C)(ii)(I)'s text is ambiguous or whether the BIA's interpretation is owed Chevron deference, we need not decide those questions today. Instead, for purposes of this case, we assume the statute is ambiguous and that Chevron deference applies.

In Richmond, the BIA held a foreign national cannot be admitted to this country under § 1182(a)(6)(C)(ii)(I) if she made (1) a false claim to U.S. citizenship;[2] (2) "with the subjective intent of achieving a purpose or benefit under the [INA] or any other Federal or State law"; and (3) "United States citizenship [] actually affect[s] or matter[s] to the purpose or benefit sought." Richmond, 26 I. & N. Dec. at 783, 786–87. The BIA said "subjective intent" was a question of fact for an immigration judge to decide. Id. at 784. However, the presence of a purpose or benefit—that is, whether citizenship "actually affect[s] or matter[s] to"

---

[2] The BIA declined to decide whether the false claim to U.S. citizenship must be made "knowingly." Richmond, 26 I. & N. Dec. at 783. As Teye did not challenge the IJ's finding on this ground, and neither party argued this issue here, we also leave it for another day.

a purpose or benefit under federal or state law—must be determined objectively. Id. at 787. When citizenship is a "prerequisite" to a purpose or benefit, citizenship actually affects the purpose or benefit. See id. at 786–87 (comparing two cases "involv[ing] aliens misrepresenting their citizenship and seeking benefits under Federal law" and concluding "only in [one case] was citizenship a prerequisite to the loan's approval—in other words, citizenship status actually affected the [] loan application").

Teye did not challenge the IJ's finding as to her subjective intent.[3] The sole question she presented to the BIA and in her petition for review in this court is whether her citizenship status actually affected her eligibility for a Georgia driver's license. The BIA applied Richmond and determined Teye's false claim to U.S. citizenship allowed her to get a five-year driver's license, as opposed to a temporary one. Because this is a ruling on a question of law, we have jurisdiction and review it de novo. See 8 U.S.C. § 1252(a)(2)(D); Jeune, 810 F.3d at 799.

In 2008 Georgia allowed non-citizens to get a temporary driver's license if they met certain requirements, but issued five- or ten-year licenses only to U.S. citizens. Specifically, Georgia law at the time allowed "an applicant who presents in person valid documentary evidence of . . . lawful presence in the United States under federal immigration law" to get a "temporary license." O.C.G.A. § 40-5-

---

[3] Thus, if subjective intent were all that § 1182(a)(6)(C)(ii)(I) required, Teye would be inadmissible.

8

21.1(a) (2006).  The temporary license was "valid only during the period of time of the applicant's authorized stay in the United States."  Id.  Thus a temporary license expired on the same date as the expiration of the documentation allowing a foreign national's lawful presence.  Ga. Comp. R. & Regs. 375-3-2-.01(1)(b) (2008).  Beyond that, "[i]f the person's immigration documentation d[id] not bear an expiration date," she got a temporary license "valid for one (1) year."  Id.  In contrast, licenses issued to "citizens of the United States expire[d] on the person's birthday in the fifth (5th) or tenth (10th) year after issuance."  Id. 375-3-2-.01(1)(a).

U.S. citizenship was a prerequisite to getting the five-year driver's license Teye got on January 26, 2008.  Her false claim of citizenship therefore actually affected her eligibility for a benefit under Georgia law, making her inadmissible under § 1182(a)(6)(C)(ii)(I).  See Richmond, 26 I. & N. Dec. at 786–87.  Teye's petition for review is therefore

**DENIED.**

O'SCANNLAIN, Circuit Judge, specially concurring:

While I join the court's opinion, I write separately to address the applicability of the Board of Immigration Appeals' (BIA) interpretation of 8 U.S.C. § 1182(a)(6)(C)(ii)(I), as expressed in its *Matter of Richmond* decision. *See* 26 I. & N. Dec. 779 (B.I.A. 2016). As the court holds today, we need not—and therefore do not—decide in this case whether to adopt such interpretation of the statute. Neither party has argued the underlying question, and our answer to it would not affect the outcome of Teye's petition for review. Nonetheless, I have some concern about the reasonableness of the BIA's interpretation offered in *Richmond*, which the parties in this case seem to accept as the controlling law.

I

Section 1182(a)(6)(C)(ii)(I) renders inadmissible any alien who "has falsely represented . . . herself to be a citizen of the United States for any purpose or benefit under . . . Federal or State law." To interpret such provision, a court must thus consider (at least) two separate questions: (1) what sorts of purposes and benefits are covered by the statute and (2) what it means for a person to have falsely represented her citizenship "for" such a purpose or benefit.

In a case like this, the answer to the first question is easy. There is no real dispute that a positive legal benefit like a state-issued driver's license is indeed a

"benefit under" state law.  The question then becomes what must be shown to establish that an alien's false representation of citizenship was made "for" such a benefit.  Is it sufficient that she subjectively intended her false statement to help her get the benefit (i.e., she lied with the *goal* of influencing the licensing decision)?  Must her lie also have objectively mattered to her receipt of the benefit (i.e., her claim of citizenship was *in fact material* to the issuance of the license)?  Or perhaps either—subjective purpose or objective materiality—alone will suffice.

Both parties assume that the answers to these questions are supplied by the standard set forth by the BIA in *Richmond*.  There, the BIA determined that the statute requires both that the alien falsely claimed citizenship "with the subjective intent of achieving a purpose or obtaining a benefit under" state or federal law *and* that such claim of citizenship "must actually affect or matter to the purpose or benefit sought."  26 I. & N. Dec. at 786–87.  Under standard principles of *Chevron* deference, we would defer to the BIA's interpretation if we determined it to be a reasonable construction of an otherwise ambiguous statute.  *See Quinchia v. U.S. Att'y Gen.*, 552 F.3d 1255, 1258–59 (11th Cir. 2008).  Even if the statute were determined to be ambiguous, however, I am not persuaded that the BIA's analysis in *Richmond* is indeed reasonable.

11

A

For our purposes, the key holding from *Richmond* is that § 1182(a)(6)(C)(ii)(I) renders an alien inadmissible only if her false representation of U.S. citizenship was *in fact material to* the purpose or benefit she sought to obtain by telling the lie. Such holding clearly pertains to the second question in the required analysis: what it means for an alien to lie "for" a purpose or benefit under state or federal law. Unfortunately, the BIA arrived at its conclusion in a very different way, by conflating it with the antecedent question of what qualifies as a "purpose or benefit" under the law in the first place. I harbor doubts over whether such analysis is logically sound.

1

In *Richmond*, the BIA framed its materiality analysis around the meaning of a "purpose or benefit under" state or federal law. *See id.* at 784–87; *accord Richmond v. Holder*, 714 F.3d 725, 729–31 (2d Cir. 2013). The BIA echoed the Second Circuit's observation that the statute's "'purpose or benefit' requirement 'cannot be read so broadly that it fails to exclude anything. There must be some situation in which an alien falsely represents himself to be a citizen for some purpose that does *not* fall under federal or state law.'" *Matter of Richmond*, 26 I. & N. Dec. at 784 (quoting *Richmond*, 714 F.3d at 729). The BIA reasoned that, to ensure such language is not mere surplusage, "the presence of a purpose or benefit

12

must be determined objectively—that is, the United States citizenship must actually affect or matter to the purpose or benefit sought." *Id.* at 786–87.[1]

The BIA's conclusion does not seem to follow from the statutory language it purports to interpret. Certainly, the statutory phrase "purpose or benefit under . . . Federal or State law" should not be read as mere surplusage. 8 U.S.C. § 1182(a)(6)(C)(ii)(I). That language must exclude some purposes or benefits, and it does: those which do not arise under state or federal law. The statute therefore applies only to false representations made to obtain benefits or purposes that exist by operation of the law (e.g., state licenses, welfare benefits, etc.). So the object of the alien's misrepresentation must be some public, legally created benefit or purpose as opposed to anything that might be considered generally "beneficial." *See, e.g.*, *Castro v. Att'y Gen.*, 671 F.3d 356, 370 (3d Cir. 2012) (minimizing risk that arresting officers would report unlawful immigration status is not a relevant benefit under the statute because it is not "a benefit created by law and administered by the police"). But it is beside the point whether such legal benefit is *also* contingent upon a showing of citizenship. Even a state-law created benefit

---

[1] Rather unhelpfully, the whole of the BIA's analysis was to recite the details of a handful of Court of Appeals cases in which the question presented was not actually answered. 26 I. & N. Dec. at 785–87. Then, with little explanation for how it arrived there, the BIA simply announced its conclusion. *See id.* at 786–87.

that does not require the recipient to be a U.S. citizen is still a benefit "under state law."

The BIA's reasoning might make sense if "purpose or benefit" meant specifically a "purpose or benefit *of United States citizenship*." If the statute applied only to benefits "of citizenship," then the government likely would need to show that citizenship was material to the benefit in question. Yet, the statute does not speak of benefits "of citizenship" but instead applies to false claims of citizenship made "for *any* purpose or benefit" that comes under federal or state law. 8 U.S.C. § 1182(a)(6)(C)(ii)(I) (emphasis added). That category of benefits can easily be defined without reference to the materiality of the beneficiary's immigration status.

2

The requirement that an alien's false claim of citizenship be *material* to the benefit sought therefore does not come (as the BIA says in *Richmond*) from the statutory language pertaining to purposes benefits "under" the law. Rather, such an element must come, if anywhere, from the statute's requirement that the false claim of citizenship was made "for" such a benefit. Unfortunately, the BIA did not focus on the meaning of such language. Moreover, I don't believe one can answer this question without careful consideration of a Supreme Court opinion largely disregarded by the BIA, *Kungys v. United States*, 485 U.S. 759 (1988). There, the

14

Supreme Court held that substantially similar language in another immigration statute plainly does *not* impose a materiality requirement.  *Id.* at 779–80.

The statute at issue in *Kungys* stated that a person is deemed not to be of "good moral character" (and is thus ineligible for naturalization), if she "has given false testimony *for the purpose of obtaining any benefits* under [immigration law]." 8 U.S.C. § 1101(f)(6) (emphasis added).  The Supreme Court rejected the argument that the statute applied only where the false testimony was actually material to the benefit sought.  *See Kungys*, 485 U.S. at 779–80.  The Court explained that the statute "[o]n its face . . . does not distinguish between material and immaterial misrepresentations."  *Id.* at 779.  "Literally read, it [applies to a person] if he has told even the most immaterial of lies with the subjective intent of obtaining immigration or naturalization benefits.  We think it means precisely what it says."  *Id.* at 779–80.  The Court observed that the lack of a materiality requirement might change little in practice as "it will be relatively rare that the Government will be able to prove that a misrepresentation that does not have the natural tendency to influence the decision regarding . . . benefits was nonetheless made with the subjective intent of obtaining those benefits."  *Id.* at 780–81.  Still,

15

the Court saw "no reason for straining to avoid [the] natural meaning" of the statute, which contained no materiality requirement. *Id.* at 781.[2]

Nearly the same textual analysis applies to the statute at issue here. Just like the statute in *Kungys*, § 1182(a)(6)(C)(ii)(I) applies to anyone who makes a certain false statement "for any purpose or benefit under" federal or state law, without any mention of the materiality of such a statement. Moreover, while § 1182(a)(6)(C)(ii)(I) is silent as to materiality, the statute's immediately preceding subsection explicitly requires materiality in different circumstances. That subsection renders inadmissible any alien "who, by fraud or willfully misrepresenting a *material fact*, seeks to procure" certain immigration benefits. *Id.* § 1182(a)(6)(C)(i) (emphasis added). The stark contrast between these neighboring subsections' treatment of materiality only further underscores the Supreme Court's point in *Kungys* that the lack of an express materiality requirement controls.[3]

---

[2] In *Richmond*, the BIA cited and followed *Kungys*, but only for its holding that the alien must harbor the subjective intent to obtain a purpose or benefit. 26 I. & N. Dec. at 784. The BIA said nothing about the critical point in *Kungys* that such subjective intent *alone* is enough, and there is no need for the alien's misrepresentation to have been objectively material to the benefit sought.

[3] An obvious inference after comparing the two sections is that the materiality element was included to limit the scope of § 1182(a)(6)(C)(i), which applies broadly to lying about *any* fact to procure certain benefits, whereas the provision in this case applies only to lying about being a *citizen*. Congress might have determined that falsely claiming citizenship in an effort to

Here, we leave for another day the question whether, in light of the statutory text and the Supreme Court's guidance in cases like *Kungys*, § 1182(a)(6)(C)(ii)(I) is ambiguous as to the question of materiality.  There might remain reasonable ways to distinguish *Kungys* and to conclude that the statute implicitly contains a materiality requirement.  But even if the statutory language could be determined to be ambiguous on this question, I hesitate to conclude that the BIA's analysis in *Richmond* is sound.  That is, even if the *result* the BIA reached might be permissible under the statute, the *reasoning* that led to such result does not appear to have been a rational interpretation of the law.

## II

Other courts have deferred, implicitly or explicitly, to the BIA's interpretation in *Richmond*.  *See Richmond v. Sessions*, 697 F. App'x 106, 107 (2d Cir. 2017); *Vega v. Lynch*, 664 F. App'x 554, 558–59 (6th Cir. 2016).  But we are reminded that *Chevron* is not an invitation to "reflexive[ly] defer[]" to a BIA interpretation which "finds little support in the statute's text."  *Pereira v. Sessions*, No. 17-459, 2018 WL 3058276, at *14 (U.S. June 21, 2018) (Kennedy, J., concurring).  In light of what I view to be the serious analytical flaws of the BIA's decision in *Richmond*, I question whether the parties are correct to assume that *Richmond*'s view of the law should control.  Indeed, I question whether

---

receive public benefits is always significant and relevant to the sound administration of immigration law, whereas lying about any number of other, trivial facts is not.

17

§ 1182(a)(6)(C)(ii)(I) requires a showing of materiality at all.  Because neither of the parties has briefed such issue, and because its answer will not affect the outcome of this case, it is not well presented for our review.  A future case, however, may require us to consider closely whether the BIA's interpretation in *Richmond* merits the sort of deference the parties wish it be given it here.