[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-10636

_____

Agency No. A072-565-851

PANKAJKUMAR S. PATEL,
JYOTSNABEN P. PATEL,
NISHANTKUMAR PATEL,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(March 6, 2019)

Before TJOFLAT, MARCUS and NEWSOM, Circuit Judges.

TJOFLAT, Circuit Judge:

This case presents interesting, and rather complicated, questions of statutory interpretation.

Pankajkumar Patel, an immigrant facing removal, asks us to review a decision by the Board of Immigration Appeals.  The Board held that Patel is inadmissible, and thus cannot get relief from removal, because he falsely represented himself as a citizen when applying for a Georgia driver's license.  The relevant statute provides that an alien is inadmissible if he falsely represents himself as a U.S. citizen "for any purpose or benefit" under the law.  8 U.S.C. § 1182(a)(6)(C)(ii)(I).  Under the Board's previous interpretation of the statute, an alien is inadmissible only if he makes the false representation with the intent to obtain the purpose or benefit, and if the false representation is material to the purpose or benefit sought.  *Matter of Richmond*, 26 I. & N. Dec. 779, 786–87 (BIA 2016).  Patel argues that he simply checked the wrong box, and that citizenship did not affect the application.  His case presents two questions.

First, whether we have jurisdiction to review Patel's claim that, as a factual matter, he checked the wrong box and thus lacked the requisite subjective intent to trigger the statute.  Second, whether we must defer to the Board's interpretation in

2

*Richmond*, finding a materiality element in the statute.  The answer to both is, we do not.

I.

Patel came to the United States from India.  He entered the country without inspection.  Consequently, the Department of Homeland Security issued a notice to appear to Patel charging him as removable for being present in the United States without inspection.  *See* 8 U.S.C. § 1182(a)(6)(A)(i) ("An alien present in the United States without being admitted or paroled . . . is inadmissible.").

Patel conceded removability, but he sought discretionary relief from removal by applying for adjustment of status under 8 U.S.C. § 1255(i).  Section 1255 permits an alien who entered without inspection to obtain relief from removal if, among other things, the alien is the beneficiary of a labor certification.  *See* § 1255(i)(1)(B)(ii).  Patel was a valid beneficiary, because he had an approved I-140 Immigrant Petition for Alien Worker.[1]

The Attorney General may adjust an alien's status to lawful permanent resident if the alien meets certain requirements.  *See* § 1255(i); *see also* 8 C.F.R. § 1245.10(b) (listing the eligibility requirements for an alien who entered without

---

[1] His wife, Jyotsnaben Patel, and son, Nishantkumar Patel, are also parties to this appeal. They too are subject to removal for entering the country without inspection.  They are seeking adjustment of status as derivative beneficiaries of Patel's labor certification.  As Patel is the lead respondent, and the outcome of all of their petitions for relief depends on his case, we focus solely on Patel for the convenience of the reader.

inspection and is seeking adjustment of status based on a labor certification).  The parties agree that Patel meets all the statutory criteria for adjustment of status except one: the applicant must show "clearly and beyond doubt" that he is not inadmissible.  *See* 8 U.S.C. § 1229a(c)(2) (in a removal proceeding, an alien applying for admission "has the burden of establishing . . . that the alien is clearly and beyond doubt entitled to be admitted and is not inadmissible").

Patel's admissibility is in doubt because he falsely represented that he was a U.S. citizen when he applied for a Georgia driver's license in 2008.  When applying for the license, Patel checked the box indicating that he is a U.S. citizen. This incident arguably renders Patel inadmissible pursuant to § 1182(a)(6)(c)(ii)(I), which says:

> Any alien who falsely represents, or has falsely represented, himself or herself to be a citizen of the United States for any purpose or benefit under this chapter (including section 1324a of this title) or any other Federal or State law is inadmissible.

The Board of Immigration Appeals interpreted this section to require three elements: (1) a false representation of citizenship; (2) that is material to a purpose or benefit under the law; (3) with the subjective intent of obtaining the purpose or benefit.  *Richmond*, 26 I. & N. Dec. at 786–87.

There was no dispute that Patel made a false representation of citizenship. Nor was there any dispute that a driver's license is a benefit under state law.  Patel

challenged the applicability of the statute on two grounds: he lacked the requisite subjective intent, and the false representation was not material.

At the removal hearing, Patel argued that he did not have the requisite subjective intent: he simply made a mistake. To prove that it was a mistake, Patel claimed that he provided his alien registration number and his employment authorization card to the DMV with his driver's license application, suggesting that it would make no sense to document his non-citizen status if his goal was to pose as a citizen.

Patel also argued that a false representation of citizenship was not material to obtaining a driver's license. He asserted that an alien is eligible to receive a driver's license in Georgia. As proof, Patel observed that he had previously received a license from Georgia.

The Immigration Judge ("IJ") rejected Patel's arguments. The IJ determined that Patel was not credible. He was evasive when testifying and would not explain to the Court exactly what the mistake was. Furthermore, contrary to his testimony, Patel did not write his alien registration number on the application. Where the application asks about citizenship, it directs the applicant to provide his alien registration number if he is not a citizen. Patel marked that he was a citizen and did not write down his alien registration number. The application also does not reflect that Patel provided his employment authorization card: in the section on the

5

form where the Georgia official is to list the documents accepted, the only document mentioned is the old Georgia driver's license.  In short, the evidence contradicted Patel's testimony, which the IJ already suspected was not candid, so the IJ did not believe Patel's claim that he made a mistake.  The IJ found that Patel willfully and purposefully indicated that he was a U.S. citizen.

The IJ also held that Patel failed to meet his burden of proving that he was otherwise eligible for a driver's license.  The fact that Patel had previously obtained a license in Georgia is inconclusive.  Patel might have misrepresented his citizenship on his past application too.  Alternatively, the IJ continued, even if Patel obtained his prior license without claiming citizenship, the rules governing who qualifies for a license in Georgia could have changed in the interim.  Patel simply did not provide enough evidence to show that he was otherwise eligible for the license.[2]

Because Patel failed to show that he was not inadmissible, the IJ denied his application for adjustment of status and ordered the removal of the Patels.

The Board affirmed.  It found no clear error in the factual finding that Patel was not credible and made the false representation for the purpose of obtaining a

---

[2] To prove his theory, Patel asked the IJ to take judicial notice of Georgia law.  The IJ refused.  We pause to note that, if asked, federal courts must take judicial notice of state law. *See Lamar v. Micou*, 114 U.S. 218, 223, 5 S. Ct. 857, 859 (1885) ("The law of any state of the Union, whether depending upon statutes or upon judicial opinions, is a matter of which the courts of the United States are bound to take judicial notice, without plea or proof.").

6

license—i.e., with subjective intent.  The Board also agreed that Patel did not produce enough evidence to prove that he was otherwise eligible for a license— i.e., to prove that the false representation was immaterial.

One board member dissented.  She observed that Georgia law extended driver's licenses to those with lawful status.  *See* Ga. Comp. R. & Regs. 375-3- 1.02(6) ("Each customer must provide documentation of his or her citizenship *or lawful status* in the United States." (emphasis added)).  And an alien with "a pending application for lawful permanent residence" has lawful status for the purpose of a driver's license application.  6 C.F.R. § 37.3.  Since Patel had a pending application for lawful permanent residence when he applied for the Georgia license, he did not need citizenship to obtain the license.  Thus, the dissenting board member reasoned, the false representation was immaterial.

Patel appeals the Board's decision.

## II.

Typically, on appeals from a Board decision, we review legal conclusions *de novo*, and we review factual findings under the substantial evidence test.  *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016).  When the Board expressly adopts the IJ's findings or reasoning, we also review the IJ's decision.  *Id.*  Both parties propose we follow the typical standard.

7

But Congress has stripped our jurisdiction to hear certain appeals of immigration cases.  And even when the parties agree, we must consider jurisdictional issues *sua sponte*.  *Gonzalez v. Thaler*, 565 U.S. 134, 141, 132 S. Ct. 641, 648 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented.").

Congress enumerated several "[m]atters not subject to judicial review" in 8 U.S.C. § 1252(a)(2).[3]  As it pertains to this case, we do not have "jurisdiction to review . . . any judgment regarding the granting of relief under section . . . 1255 of this title."  § 1252(a)(2)(B).  However, even when this jurisdictional bar applies, we still have power to review constitutional claims or questions of law.  *See* § 1252(a)(2)(D).  In short, we cannot review appeals from judgments under § 1255 unless the party raises a constitutional claim or a question of law.

---

[3] The statute provides, in relevant part:

(2) Matters not subject to judicial review

…

(B) Denials of discretionary relief

…

[N]o court shall have jurisdiction to review—

(i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or

(ii) any other decision or action of the Attorney General . . . the authority for which is specified under [8 U.S.C. §§ 1151–1381] to be in the discretion of the Attorney General[.]

8

Accordingly, as Patel appeals from the denial of his claim for adjustment of status under § 1255, we review the legal conclusions below *de novo*, but we cannot review the factual findings.[4]

---

[4] On closer inspection, the jurisdictional issue is more complicated. Section 1252(a)(2)(B)(i) precludes review of "any judgment regarding the *granting* of relief." (emphasis added). Arguably, judgments *denying* relief do not come within the statute. This reading of the text is even more plausible when considered alongside other provisions limiting judicial review of immigration cases. In those provisions, Congress precluded review of decisions to "grant or deny" a waiver. *See, e.g.*, § 1182(h); *see also Nken v. Holder*, 556 U.S. 418, 430, 129 S. Ct. 1749, 1759 (2009) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (alteration in original) (quotation omitted)). Additionally, if § 1252(a)(2)(B)(i) is interpreted to apply to judgments both granting and denying relief, it likely renders superfluous two other jurisdiction stripping provisions referenced in the section. *Compare* § 1252(a)(2)(B)(i) (precluding review of "any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255"), *with* § 1182(h) ("No court shall have jurisdiction to review a decision of the Attorney General to grant or deny a waiver under this subsection."), *and* § 1182(i)(2) ("No court shall have jurisdiction to review a decision or action of the Attorney General regarding a waiver under paragraph (1)."). We are also mindful that there is a strong presumption in favor of interpreting statutes to allow judicial review of administrative actions; consequently, jurisdiction stripping is construed narrowly. *See Kucana v. Holder*, 558 U.S. 233, 251–52, 130 S. Ct. 827, 839 (2010).

On the other hand, the title of the subsection says "[d]enials of discretionary relief." § 1252(a)(2)(B). While section headings cannot displace the text of the statute, they can help resolve ambiguities in the text's meaning. *See Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47, 128 S. Ct. 2326, 2336 (2008). This principle begs the question of whether the text "any judgment regarding the granting of relief" is ambiguous, or whether the title— which singles out denials of relief—would displace conflicting text. The text is arguably ambiguous, because it mentions judgments *regarding* the granting of relief. At any rate, it would be an odd turn of reasoning to say that a subsection purportedly about denials is really limited to grants.

Furthermore, one could argue that denials of relief under § 1255 are excluded by the catchall provision in § 1252(a)(2)(B)(ii). But this interpretation runs into the same problem of rendering § 1182(h) and § 1182(i) superfluous. Plus, when interpreting statutes, we favor the specific over the general, and because § 1252(a)(2)(B)(i) specifically deals with appeals from § 1255, we probably should not interpret the catchall provision to deal with the same thing. *See In re Read*, 692 F.3d 1185, 1191 (11th Cir. 2012) ("General language of a statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part of the same enactment." (quoting *D. Ginsberg & Sons, Inc. v. Popkin*, 285 U.S. 204, 208, 52 S. Ct. 322, 323 (1932)).

III.

The issue in this case is whether Patel is inadmissible pursuant to § 1182(a)(6)(C)(ii)(I) for falsely representing himself to be a U.S. citizen on his driver's license application. The Board has read two elements into the statute: subjective intent—the alien must make the false representation with the intent of obtaining a purpose or benefit under the law—and materiality—the false representation must be material to the purpose or benefit sought. *Richmond*, 26 I. & N. Dec. at 786–87. Patel claims that he does not meet either requirement. We address each claim in turn.

A.

Patel contends that he did not have the requisite subjective intent when the made the false representation of citizenship. He says that he made a mistake—he did not intend to make the false representation, he meant to check the box indicating that he was a non-citizen. This argument assumes that the false representation must have been made knowingly. We doubt that there is a knowing

---

For these reasons, we think the application of § 1252(a)(2)(B) to denials of relief under § 1255 is at least unclear. If it does not apply, we would be free to review factual findings under the typical substantial evidence test. Ultimately, however, we are bound to follow our precedents. To our knowledge, none of our precedents have grappled with the arguments raised here. But we have routinely read § 1252(a)(2)(B)(i) to apply to appeals of grants and denials. *See, e.g.*, *Jimenez-Galicia v. U.S. Att'y Gen.*, 690 F.3d 1207, 1209 (11th Cir. 2012) ("The INA prevents judicial review of the Board's discretionary judgments that grant or deny petitions for cancellation of removal."). And we cannot get around the prior panel precedent rule just because the prior panel did not consider this argument; there is no exception for that. *See Smith v. GTE Corp.*, 236 F.3d 1292, 1302–03 (11th Cir. 2001).

requirement.[5]  Because the parties did not address this question, however, we will

assume that there is and that Patel's claim, if true, would have entitled him to relief

below.

At bottom, Patel maintains that the evidence, if properly considered, shows

that he made a mistake.  He repeats his assertion that he provided the DMV official

with his immigration documents.  If true, it must have been a mistake to check the

---

[5] The question is, what exactly does subjective intent require?  It could mean that the alien must intend to make a false representation of citizenship—i.e., a knowing requirement—or it could mean that the alien must make a false representation, wittingly or unwittingly, with the intent of obtaining a purpose or benefit under the law.  In other words, does the statute cover those who even accidentally make a false representation of citizenship in the course of pursuing a purpose or benefit under the law?

We seriously doubt that § 1182(a)(6)(C)(ii)(I) requires the false claim to be knowing. For starters, the text does not mention a "knowing" or "willful" false representation of citizenship.  *See Valadez-Munoz v. Holder*, 623 F.3d 1304, 1309 n.7 (9th Cir. 2010) ("It should be noted that the criminal statute requires the representation to be both false and willful, while [§ 1182(a)(6)(C)(ii)(I)] only requires falsity.").  And, again, the immediately preceding subsection does include a knowing requirement.  § 1182(a)(6)(C)(i) ("Any alien who, by fraud or *willfully* misrepresenting a material fact, seeks to procure . . . [an immigration benefit] is inadmissible." (emphasis added)).

In addition, if we interpreted the statute to include a knowing requirement, it would render superfluous the exception in the immediately following subsection.  The exception provides that an alien who falsely claims citizenship for a public benefit "shall not be considered to be inadmissible" if, among other things, the alien "reasonably believed at the time of making such representation that he or she was a citizen."  8 U.S.C. § 1182(a)(6)(C)(ii)(II).  If the provision at issue in this case contains a knowing requirement, the exception Congress explicitly included is entirely unnecessary.  *See Richmond v. Holder*, 714 F.3d 725, 729 n.3 (2d Cir. 2013) ("The negative pregnant of this exception is clear: for aliens . . . who fail to meet those requirements, false citizenship claims need not be knowing to run afoul of [the statute].").  Basic principles of statutory interpretation counsel strongly against that result.  *See Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 824 (2018) (It is "one of the most basic interpretive canons, that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." (alteration omitted) (quotation omitted)).

Furthermore, the Board did not decide this issue, so there is no issue of *Chevron* deference.  *Richmond*, 26 I. & N. Dec. at 783 ("[W]e need not reach the parties' arguments relating to whether a false claim must be made knowingly[.]").

citizen box, since it would make no sense for someone posing as a citizen to provide proof of their immigrant status.  Of course, the Board and the IJ decided his assertion was not true.  Patel also argues that because he secured a driver's license in the past, he knew he could get a license without posing as a citizen, and there was no reason to lie.[6]

But we do not have jurisdiction to review these arguments.  "Whether [Patel's] false claim was made with a subjective intent is a question of fact to be determined by the Immigration Judge." *Richmond*, 26 I. & N. Dec. at 784.  And we do not review factual findings from denials of relief under § 1255. *See* § 1252(a)(2).  Patel's claim is nothing more than a request for us to reweigh the evidence.  This is a standard factual dispute, and we cannot review it.

## B.

Patel's second claim is that he does not satisfy the materiality element of § 1182(a)(6)(C)(ii)(I), because a Georgia driver's license is available to non-citizens.  While the Board interprets the statute to include a materiality element, we

---

[6] Not quite.  Georgia law dictates that a non-citizen with lawful status can only receive a temporary license, while a citizen is eligible for an eight-year license.  *Compare* O.C.G.A. § 40-5-21.1(a), *with* Ga. Comp. R. & Regs. 375-3-2.01(1)(a).  Thus, the opportunity to get a longer-term license is a possible reason to falsely claim citizenship.

12

have never applied the Board's construction of the statute in a published opinion.[7]

Thus, the initial inquiry is whether to defer to the Board's interpretation.

When an agency has authority to interpret a statute, we defer to its interpretation if the statute is ambiguous and the interpretation is reasonable. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–44, 104 S. Ct. 2778, 2781–82 (1984). This deference extends to precedential, three-member Board decisions interpreting immigration law. *See INS v. Aguirre-Aguirre*, 526 U.S. 415, 425, 119 S. Ct. 1439, 1445 (1999) (according *Chevron* deference to a Board decision interpreting the Immigration and Nationality Act); *see also Quinchia v. U.S. Att'y Gen.*, 552 F.3d 1255, 1258 (11th Cir. 2008) (holding that while *Chevron* deference applies to precedential, three-member Board decisions, it does not apply to single-judge Board decisions that do not rely on precedent). *Richmond* is a precedential, three-member Board decision.

1.

First, we determine whether the statute is ambiguous. If the statute is unambiguous, we simply apply its plain meaning, and there is no room for deference. *See SEC v. Levin*, 849 F.3d 995, 1003 (11th Cir. 2017). A statute is ambiguous "if it is susceptible to more than one reasonable interpretation." *In re*

---

[7] In fact, we have never interpreted any part of § 1182(a)(6)(C)(ii)(I) in a published decision. Nor have we interpreted in a published decision 8 U.S.C. § 1227(a)(3)(D)(i), which uses the exact same language to make an alien deportable for falsely claiming citizenship.

*BFW Liquidation, LLC*, 899 F.3d 1178, 1188 (11th Cir. 2018) (quotation omitted).

"In determining whether a statute is plain or ambiguous, we consider the language

itself, the specific context in which that language is used, and the broader context

of the statute as a whole." *Id.* (quotation omitted).[8]

The plain meaning of the text is clear—there is no materiality element.  The

statute reads, "Any alien who falsely represents, or has falsely represented, himself

or herself to be a citizen of the United States for any purpose or benefit under . . .

Federal or State law is inadmissible."  § 1182(a)(6)(C)(ii)(I).  The text makes clear

that the false representation must be made *for* a purpose or benefit under the law.

What does it mean to do something for a purpose or benefit?  In this context, the

word "for" is a function used to indicate purpose, an intended goal, or the object of

an activity.  *For*, Merriam-Webster.com, https://www.merriam-webster.com/

---

[8] Because we are interpreting an immigration law where relief from removal hangs in the balance, there is another tool of statutory construction we would normally consider—the rule of lenity.  *See INS v. St. Cyr*, 533 U.S. 289, 320, 121 S. Ct. 2271, 2290 (2001) (referencing "the longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien" (quotation omitted)).  But the rule of lenity is a rule of last resort.  *See Moskal v. United States*, 498 U.S. 103, 108, 111 S. Ct. 461, 465 (1990) ("[W]e have always reserved lenity for those situations in which a reasonable doubt persists about a statute's intended scope even *after* resort to the language and structure, legislative history, and motivating policies of the statute." (quotation omitted)).  Thus, we do not employ the rule of lenity until we determine that the statute is ambiguous through the usual tools of construction.  For this reason, it seems clear that—regardless of whether the rule of lenity applies at step two of the *Chevron* inquiry, *see* Brian G. Slocum, *The Immigration Rule of Lenity and* Chevron *Deference*, 17 Geo. Immigr. L.J. 515, 576–82 (2003), or if it only applies after the court determines the agency's decision is unreasonable, *see* David S. Rubenstein, *Putting the Immigration Rule of Lenity in its Proper Place: A Tool of Last Resort After* Chevron, 59 Admin. L. Rev. 479, 504–19 (2007)—it has no place at step one, where we decide if the statute is ambiguous in the first place.

dictionary/for (last visited Feb. 4, 2019).  Applied to the statute, the alien must make the false representation with the goal of obtaining a purpose or benefit under the law.

It does not follow that the false representation must be material to the purpose or benefit sought.  Aliens can make a false representation with the goal of obtaining a benefit, even if the false representation does not help them achieve that goal.  To illustrate, consider the example of an ethically challenged student who cheats on his test.  The honor code prohibits using unauthorized materials for the purpose of cheating, but the student steals an answer key from the teacher's desk, memorizes the answers, and reproduces them on the test exactly as they were recorded on the answer key.  Unfortunately for the student, the answer key was for a different test, and he fails miserably.  Is there any doubt the student is guilty of cheating?  He used unauthorized material for the purpose of cheating.  Just because the answer key was immaterial, and did not help the student achieve his goal, the student's purpose was still to cheat.  Similarly, if an alien makes a false representation of citizenship to obtain a benefit under the law, but citizenship turns out to be completely unrelated to obtaining the benefit, the alien's purpose was still to obtain the benefit.

If Congress intended to make materiality an element of the statute, it easily could have done so.  For example, the statute could have said "for any relevant

15

purpose or benefit," or "for any material purpose or benefit."  In fact, Congress did include a materiality element in the immediately preceding subsection, which says: "Any alien who, by fraud or willfully misrepresenting a *material* fact, seeks to procure . . . [an immigration benefit] is inadmissible."  8 U.S.C. § 1182(a)(6)(C)(i) (emphasis added).  We presume that Congress is deliberate when it includes a term in one section of a statute but omits it in another.  *Ela v. Destefano*, 869 F.3d 1198, 1202 (11th Cir. 2017) ("It is well settled that where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quoting *Duncan v. Walker*, 533 U.S. 167, 173, 121 S. Ct. 2120, 2125 (2001))).  Thus, unless there is persuasive evidence to the contrary, we assume that Congress intended to include a materiality element in § 1182(a)(6)(C)(i) but not in § 1182(a)(6)(C)(ii)(I).

As evidence, Patel says that we must read the statute in context.  Section 1182(a)(6)(C)(ii)(I) supplements its immediate predecessor by expanding the range of benefits to which it applies—i.e., any purpose or benefit under state or federal law, rather than any immigration benefit.  From this, Patel infers that Congress' only concern was with aliens falsely claiming citizenship to get benefits restricted to U.S. citizens.  But that is not what the statute says.  It does not say for any

16

purpose or benefit under the law "restricted to U.S. citizens" or "available only to U.S. citizens."  Patel asks us to add elements that are not in the text.

The context actually suggests that declining to graft a materiality requirement onto the statute is consistent with the statute's purpose.  Tellingly, Congress made § 1182(a)(6)(C)(i) waivable, but not § 1182(a)(6)(C)(ii)(I).  *See* 8 U.S.C. § 1182(a)(6)(C)(iii).  This difference suggests that Congress thought falsely claiming citizenship to get a public benefit is more serious than misrepresenting some other fact to get an immigration benefit.  Refusing to impose a materiality requirement is consistent with treating false claims of citizenship more seriously.  Furthermore, materiality is an important limitation for § 1182(a)(6)(C)(i).  There, the misrepresentation could be about *any* fact, which would be very broad without a materiality requirement.  In contrast, § 1182(a)(6)(C)(ii)(I) only applies to false claims about *citizenship*.  This limitation substantially narrows the provision's applicability on its own.

Further bolstering our reading of the statute, the Supreme Court reached the same conclusion when interpreting another statute with very similar text.  *See Kungys v. United States*, 485 U.S. 759, 108 S. Ct. 1537 (1988).  The statute at issue in *Kungys* provides that a person is not of "good moral character" (and thus is ineligible for naturalization) if he "has given false testimony for the purpose of obtaining any benefits under [immigration law]."  8 U.S.C. § 1101(f)(6).  For our

17

purposes, the text is strikingly similar—it applies to someone who gives false testimony for a benefit under immigration law. Neither the statute in *Kungys* nor the one in this case mentions materiality. The Supreme Court held that the statute "does not distinguish between material and immaterial misrepresentations." *Kungys*, 485 U.S. at 779, 108 S. Ct. at 1551. "Literally read," the Court explained, it applies to a person "if he has told even the most immaterial of lies with the subjective intent of obtaining immigration or naturalization benefits. We think it means precisely what it says." *Id.* at 779–80, 108 S. Ct. at 1551.

Patel maintains that the statute in *Kungys* is different because it had a limited scope that avoided harsh results. True, § 1182(a)(6)(C)(ii)(I) is broader in some ways—it applies to oral and written statements, whether or not under oath, for any purpose or benefit under the law. *See Kungys*, 485 U.S. at 780, 108 S. Ct. at 1551 (explaining that statute only applied to "oral statements made under oath" for the purpose "of obtaining immigration benefits"). But § 1182(a)(6)(C)(ii)(I) is also narrower in another important respect: it only applies to false claims of citizenship. More to the point, the differences between the statute in *Kungys* and the one in this case make perfect sense. The statute in *Kungys* is about identifying moral character—thus, lying under oath for any reason is relevant. Here, if the goal is to deter aliens from falsely claiming citizenship to get public benefits, it would be counterproductive to limit the statute to oral statements made under oath, since

18

sworn testimony of citizenship status often is not required to get public benefits (such as a driver's license).

## 2.

Patel's main argument for inserting a materiality element into the statute is that without it the statute will produce draconian results.  Namely, he posits that without a materiality element an alien could become permanently inadmissible simply for checking the wrong box on an application.  At first glance, it appears that Patel's example—mistakenly checking the wrong box—is really about whether the false claim to citizenship must be knowing.[9]  Viewed in that light, it is tempting to dismiss Patel's example as unrelated to the issue here: materiality.  But in at least some cases, a materiality element would prevent the draconian result Patel puts forward.  To see why, imagine that the statute requires materiality, and a non-citizen is seeking a public benefit that is available to citizens and non-citizens alike.  The non-citizen mistakenly checks the wrong box—falsely claiming citizenship for a public benefit.  If the statute requires materiality, pointing out the immateriality of citizenship to the benefit sought would be an effective defense.  Nevertheless, we are not persuaded by this argument to write a materiality element into the statute.

---

[9] *See supra* note 5.

As a preliminary matter, even if we agree that the statute allows for harsh or unfair consequences, that does not give us license to ignore the plain meaning of the text. We will look beyond the unambiguous plain meaning of the text only if the plain meaning produces absurd results. *Silva-Hernandez v. U.S. Bureau of Citizenship & Immigration Servs.*, 701 F.3d 356, 363 (11th Cir. 2012) ("This Court's one recognized exception to the plain meaning rule is absurdity of results."). This is a narrow exception—the results must be "truly absurd."[10] *Silva-Hernandez*, 701 F.3d at 363. "Otherwise, clearly expressed legislative decisions would be subject to the policy predilections of judges." *Id.* (quoting *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1188 (11th Cir. 1997)). Our job when interpreting statutes is to faithfully effectuate legislative intent, and we assume that Congress would not intend truly absurd results. *See Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 470, 109 S. Ct. 2558, 2575 (1989) (Kennedy, J., concurring) ("When used in a proper manner, this narrow exception to our normal rule of statutory construction does not intrude upon the lawmaking powers of Congress,

---

[10] To illustrate, here are a few classic examples of absurd results: a statute criminalizing the obstruction of mail could not have been intended to punish a police officer who lawfully arrested a postal worker for homicide; an antiquated rule prohibiting drawing blood in the streets could not have been meant to apply to a doctor performing emergency surgery; and a law banning prison escapes could not have been intended to punish an inmate for fleeing from a burning prison. John F. Manning, *The Absurdity Doctrine*, 116 Harv. L. Rev. 2387, 2402 (2003).

20

but rather demonstrates a respect for the coequal Legislative Branch, which we assume would not act in an absurd way.").

If a result is consistent with the statute's purpose, it is not the place of judges to declare the result absurd and craft a different outcome. *Cf. Silva-Hernandez*, 701 F.3d at 364 ("Not only is the plain meaning of the statute not absurd, it arguably furthers the legislative intent[.]"); *EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107, 120, 108 S. Ct. 1666, 1674 (1988) (four votes) (refusing to follow an interpretation that leads to "absurd or futile results . . . plainly at variance with the policy of the legislation as a whole" (alteration in original) (quotation omitted)).

While there is a narrow exception for absurd results, saying that a result is draconian is not the same as saying it is absurd.[11] Of course, draconian results may help show absurdity. *See Commercial Office Prods. Co.*, 486 U.S. at 120, 108 S. Ct. at 1674 (four votes) (relying on a "severe consequence, in conjunction with [a] pointless delay," to find that an interpretation led to absurd results). But to be clear, there is no standalone exception for draconian results. Such an exception would be a prescription for judicial legislating—with courts altering the plain text of statutes each time a case uncovers what one judge considers to be an injustice.

---

[11] While the Supreme Court in *Kungys* made efforts to show that a "literal reading of the statute does not produce draconian results," it did not say that the plain meaning should be ignored if the statute had. *Kungys*, 485 U.S. at 780–81, 108 S. Ct. at 1551–52.

21

The result here is not absurd.  Congress enacted the provision to crack down on aliens falsely claiming citizenship to get jobs and public benefits.  *See Castro v. Att'y Gen.*, 671 F.3d 356, 368–69 (3d Cir. 2012) (reviewing legislative history).  Applying the statute even when citizenship is immaterial advances the legislation's purpose because it deters aliens from falsely claiming citizenship.  Admittedly, the statute is written broadly.  We think Congress intended to do so.  It is consistent with Congress' choice to not make the provision waivable.  *See* § 1182(a)(6)(C)(iii).

Congress made one limited exception to inadmissibility for falsely claiming citizenship.  The statute provides that a person who falsely claims citizenship for a public benefit is not inadmissible if: each parent is or was a citizen, the person permanently resided in the US before turning 16, and the person "reasonably believed . . . that he or she was a citizen."  § 1182(a)(6)(C)(ii)(II).  The exception suggests that Congress thought about the consequences of the provision and carved out what it considered a harsh or unfair result.  By extension, other consequences do not warrant an exception.  When Congress has made an exception for those who, in limited circumstances, falsely claim citizenship by mistake, it is hard to see how applying the statute to those who are outside those circumstances is absurd.  It seems to be precisely what Congress intended.

3.

We turn briefly to the Board's opinion in *Richmond*. The Board's analysis is flawed and unclear.[12] However, because we conclude that the statute is unambiguous on materiality, we need not determine whether the Board's interpretation is reasonable. Rather, we consider the Board's textual arguments to inform our analysis of the plain meaning.

The Board derives the materiality element, not from the "for any purpose or benefit" language, but from the language "under this chapter . . . or any other Federal or State law." § 1182(a)(6)(C)(ii)(I); *see Richmond*, 26 I. & N. Dec. at 784. As best we can tell, the opinion figures that since the statute defines the scope of the purpose or benefit with reference to other federal or state law, citizenship must be material to the purpose or benefit sought. *See id.* at 784, 786–87. If you think that argument is unclear, so do we.[13] At any rate, Patel's case demonstrates the fallacy of that reasoning. The parties agree that a driver's license is a benefit under the law. Even if citizenship is immaterial to getting a license, it does not change the fact that a license is still a benefit under the law. Put differently, the

---

[12] For a discussion of the problems with the Board's reasoning, *see Teye v. U.S. Att'y Gen.*, 740 F. App'x 944, 948–51 (11th Cir. 2018) (O'Scannlain, J., concurring).

[13] Here is what the Board said: Because of the word "under," the statute "is dependent on the statutory provisions of the Act or any other Federal or State law. Therefore, we interpret the phrase . . . to mean that a false claim must be made to achieve a purpose or benefit that is governed by one of these laws. We also . . . find that the presence of a 'purpose or benefit' . . . must be determined objectively. . . . [T]hat is, the United States citizenship must actually affect or matter to the purpose or benefit sought." *Id.* at 784, 787.

text does not require that the purpose or benefit sought be one restricted or available only to citizens.

The other reason the Board gave for finding a materiality element was to ensure that the statute is not "read so broadly that it fails to exclude anything." *Id.* at 784. The purpose or benefit language must do some work. We agree. But it does not follow that without a materiality element, the language is superfluous. The statute would still require that the purpose or benefit arise under the law. To state an obvious example—though we do not suggest that this is the outer limit of the statute's reach—if someone falsely claims to be a citizen in casual conversation with a friend, perhaps because they are embarrassed about their citizenship status or are worried they will be judged, that is not for a purpose or benefit under the law. Since the parties agree that a driver's license is a benefit under the law, we do not need to decide the contours of the purpose or benefit requirement. *See, e.g.*, *Castro*, 671 F.3d at 370 (finding that minimizing the risk of detection is not necessarily a benefit under the law for the statute's purposes). It suffices to note that the requirement can provide a meaningful limit without a materiality element.

*   *   *

In sum, the statute renders inadmissible an alien who (1) falsely claims to be a citizen (2) with the intent of obtaining a purpose or benefit (3) that arises under

24

federal or state law.[14]  It does not require that citizenship be material to the purpose or benefit sought.  For this reason, Patel's argument that he does not qualify under the statute because his false representation was not material is, well, immaterial.

IV.

Patel's petition for review is denied.

**PETITION DENIED.**

---

[14] While our rephrasing of the statute omits the language "under this chapter (including section 1324a of this title)," we do not mean to suggest it should be overlooked.  This language is important.  *See Diaz-Jimenez v. Sessions*, 902 F.3d 955, 958–59 (9th Cir. 2018) (noting that the reference to § 1324a makes it clear that seeking private employment qualifies as a purpose or benefit under the statute).  Our reduction of this part of the statute throughout the opinion to "under the law" is a stylistic convenience.

25

NEWSOM, Circuit Judge, concurring:

I concur in the judgment, and I join in the Court's opinion except for footnotes 4 and 5, which seem to me unnecessary to the resolution of the case.