[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-10606
Non-Argument Calendar
_____

Agency No. A205-102-889

EFRAIN GOMEZ VELASQUEZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(December 18, 2020)

Before MARTIN, BRANCH and FAY, Circuit Judges.

PER CURIAM:

Efrain Gomez Velasquez ("Gomez") petitions for the review of the order of the Board of Immigrations Appeals ("BIA") affirming the Immigration Judge's ("IJ") decision denying Gomez cancellation of removal pursuant to the Immigration and Nationality Act ("INA") § 240A(b)(1), 8 U.S.C. § 1229(b)(1). We deny his petition.

## I. BACKGROUND

Gomez is a native and citizen of Guatemala who entered the United States without inspection in June 1999. In 2012, Gomez was served with a notice to appear, which alleged that he was removable pursuant to INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), for having entered the country without inspection. At an initial hearing, Gomez conceded removability and indicated that he would apply for cancellation of his removal, which he subsequently did. In 2014, Gomez's wife, Faustina Matias Pablo ("Matias"), also was served with a notice to appear, which contained similar allegations. Their cases were consolidated; Matias also applied for cancellation.

At the merits hearing in 2016, Gomez testified he was from Guatemala and had entered the United States without inspection in 1999. He had been married to Matias since 2013; they had been together for around 23 years. He admitted to being arrested four times in the United States; the first arrest, in 2006, involved an argument with Matias, and the charges were dropped. He stated that they had an

2

argument and "[s]he became upset, and maybe she thought [he] was going to hit her, and she called the police. But that didn't happen." He stated that the police "had to take [him] in because [he] was upset, just to calm down." That was the only time he was arrested for an issue with his wife, but his wife did not accuse him of physical contact. He was unsure of the ultimate legal disposition of his arrest, but he believed that his wife withdrew the charges.

The IJ questioned Gomez, asking why Matias believed that he was going to hit her. He replied that he "honestly [did not] know." He also stated that he "never hit her." He said that, if Matias were questioned about the incident, she would confirm that he did not hit her.

The government called Matias, who testified that she called the police because she was afraid of Gomez during the argument. He hit her on her face, which was the first time he had done so. Gomez subsequently retook the witness stand and stated, "The truth is -- well, I didn't hit her hard." He confirmed that he had hit his wife. He then stated, "I'm sorry. I'm sorry for having lied. I don't know. I'm sorry for that." He stated that he was not sure why he had lied to the court and blamed it on his nerves. The IJ then asked him again why he had lied, to which Gomez responded, "Maybe I was afraid of being deported . . . and having my children without their father." The IJ then asked, "So, you were afraid that if

you told the court the truth, that you would be deported?"  Gomez responded, "Yes."

The IJ denied Gomez's application for cancellation of removal and granted Matias's application.  She found that Gomez was not credible because he repeatedly denied having hit his wife until he was confronted with his wife's testimony to the contrary and that Gomez admitted to giving false testimony because he was afraid that the truth would result in his removal.  The IJ found that Gomez's "falsehood was a deliberate attempt to procure a benefit to preclude his removal," so he was subject to INA § 101(f)(6), 8 U.S.C. § 1101(f)(6), which precludes a finding of good moral character if an individual offers false testimony to obtain an immigration benefit.  Accordingly, the IJ concluded that he lacked the good moral character statutorily required for cancellation of removal.

Gomez appealed to the BIA.  The BIA affirmed the IJ's decision, explaining that a person is precluded from having the good moral character required for cancellation if he gives false testimony for the purpose of obtaining an immigration benefit.  The BIA "discern[ed] no clear error in the Immigration Judge's factual finding that [Gomez] provided false testimony for the purpose of avoiding removal."  It noted that Gomez admitted to lying about not hitting his wife because he was afraid of being deported and that, relying on *Matter of Richmond*, 26 I. & N. Dec. 779 (BIA 2016), Gomez had "argue[d] that he did not lie with the intent to

4

obtain a benefit, but rather to avoid removal." It concluded that *Richmond* did not apply because it involved a different statute; however, to the extent that it did apply, *Richmond* supported the IJ's reasoning because the desire to avoid removal proceedings was a "purpose" under a statute involving false claims to U.S. citizenship. The fact that Gomez had not directly mentioned his application for cancellation of removal was irrelevant because his lie occurred during his hearing on his application and cancellation of removal is "undoubtedly a benefit" under the INA. The BIA dismissed the appeal.

On petition for review, Gomez argues that (1) the BIA erred in implicitly finding that his subjective intent was not required under § 1101(f)(6); (2) the BIA improperly made its own finding as to subjectivity; and (3) lying to avoid removal is not lying to obtain an immigration benefit.

## II. DISCUSSION

We review only the decision of the BIA, except to the extent that the BIA expressly adopts or explicitly agrees with the IJ's opinion. *Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 947-48 (11th Cir. 2010). We review questions of law de novo and administrative factfinding for substantial evidence. *Id.* at 948. The BIA cannot engage in factfinding; it reviews the IJ's findings only for clear error. 8 C.F.R. § 1003.1(d)(3)(i).

5

We review our subject matter jurisdiction de novo.  *Martinez v. U.S. Att'y Gen.*, 446 F.3d 1219, 1221 (11th Cir. 2006).  Under the INA, we lack jurisdiction to review discretionary judgments regarding petitions for cancellation of removal. INA § 242(a)(2)(B)(i), 8 U.S.C. § 1252(a)(2)(B)(i).  However, we retain jurisdiction to review "constitutional claims or questions of law raised upon a petition for review."  INA § 242(a)(2)(D), 8 U.S.C. § 1252(a)(2)(D).  The claim must be colorable, and "a party may not dress up a claim with legal or constitutional clothing to invoke our jurisdiction."  *Patel v. U.S. Att'y Gen.*, 971 F.3d 1258, 1272 (11th Cir. 2020) (en banc) ("*Patel II*").  In *Patel II*, we overruled en banc our line of cases stating that we have jurisdiction under the discretionary decision bar to review "non-discretionary legal decisions that pertain to statutory eligibility for discretionary relief."  *Id.* at 1262 (quoting *Gonzalez-Oropeza v. U.S. Att'y Gen.*, 321 F.3d 1331, 1332 (11th Cir. 2003)).  Instead, we are precluded from reviewing "'any judgment regarding the granting of relief under [8 U.S.C §§] 1182(h), 1182(i), 1229b, 1229c, or 1255' except to the extent that such review involves constitutional claims or questions of law."  *Id.* (alteration in original) (citing 8 U.S.C. § 1252(a)(2)(B)(i) & (D)).  An argument that the BIA applied the wrong legal standard is a question of law.  *Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 799 (11th Cir. 2016); *see also Patel II*, 971 F.3d at 1283-84 (explaining that we

6

have jurisdiction over the alleged misapplication of a legal standard, which includes the meaning of a statute).

Although we review the BIA's statutory interpretation de novo, we will give *Chevron*[1] deference to the BIA's reasonable interpretation of an ambiguous statute. *Quinchia v. U.S. Att'y Gen.*, 552 F.3d 1255, 1258 (11th Cir. 2008). However, if we determine that the statute is not ambiguous using the "traditional tools of statutory construction," then we give no deference to the BIA. *Barton v. U.S. Att'y Gen.*, 904 F.3d 1294, 1298 (11th Cir. 2018), *cert. granted sub nom. Barton v. Barr*, 139 S. Ct. 1615 (2019), *and aff'd sub nom. Barton v. Barr*, 140 S. Ct. 1442 (2020). We give statutory language its ordinary meaning, *id.* at 1298, and look to "whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case," *Lanier v. U.S. Att'y Gen.*, 631 F.3d 1363, 1365 (11th Cir. 2011) (quoting *Delgado v. U.S. Att'y Gen.*, 487 F.3d 855, 862 (11th Cir. 2007)). Dictionaries are permissible indicators of meaning, and the use of "any" in a statute expands the meaning of the word that it modifies. *Patel II*, 971 F.3d at 1273-74.

For certain nonpermanent residents, the Attorney General may cancel the removal of a noncitizen[2] who is inadmissible or deportable from the United States

---

[1] *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778 (1984).

[2] The term "noncitizen" is equivalent to the statutory term "alien." *See Nasrallah v. Barr*, 140 S. Ct. 1683, 1689 n.2 (2020); *United States v. Estrada*, 969 F.3d 1245, 1253 n.3 (11th Cir. 2020).

if the noncitizen: (1) has been physically present in the United States for a continuous period of not less than ten years prior to the application; (2) has been a person of good moral character for those ten years; (3) has not been convicted of the crimes outlined at 8 U.S.C. §§ 1182(a)(2), 1227(a)(2) and 1227(a)(3); and (4) establishes that his removal "would result in exceptional and extremely unusual hardship" to his spouse, parent, or child who is a U.S. citizen or lawful permanent resident.  INA § 240A(b)(1), 8 U.S.C. § 1229b(b)(1).  However, the INA prohibits a finding of good moral character if the noncitizen "has given false testimony for the purpose of obtaining any benefits under this chapter."  INA § 101(f)(6), 8 U.S.C. § 1101(f)(6).  "[Section] 1101(f)(6) applies to only those misrepresentations made with the subjective intent of obtaining immigration benefits."  *Kungys v. United States*, 485 U.S. 759, 780, 108 S. Ct. 1537, 1551 (1988).  In rejecting a requirement that the false statement be a material misrepresentation, the Supreme Court explained that the primary purpose of INA § 101(f)(6), 8 U.S.C. § 1101(f)(6), is to inquire into a noncitizen's character and not to prevent falsities from influencing immigration proceedings.  *Id.*, 108 S. Ct. at 1551.  Whether a noncitizen possessed the requisite subjective intent is a question of fact.  *Id.* at 782, 108 S. Ct. at 1552.

We have not specifically addressed the meaning of "any benefits" under INA § 101(f)(6), 8 U.S.C. § 1101(f)(6), and whether an admission to lying to avoid

8

removal qualifies as "giv[ing] false testimony for the purpose of obtaining [a] benefit[]" under the INA.  Black's Law Dictionary defines a "benefit" as, among other things, "the helpful or useful effect something has."  *Benefit*, *Black's Law Dictionary* (11th ed. 2019).  Merriam Webster's definitions of "benefit" include "something that produces good or helpful results or effects."  *Benefit*, *Merriam-Webster Online Dictionary*, https://www.merriam-webster.com/dictionary/benefit (last visited December 9, 2020).  Other Circuit Courts also have not squarely defined what qualifies as a "benefit" under INA § 101(f)(6).  However, the Fifth Circuit has held that "a permanent resident consequently 'obtains' a 'benefit' if he successfully withstands an investigation" into his immigration status.  *Liwanag v. I.N.S.*, 872 F.2d 685, 689 (5th Cir. 1989) (reviewing a claim from a noncitizen who argued that "his false testimony was delivered not to 'obtain' immigration benefits, as the statute reads, but rather to 'retain' his permanent resident status").

In *Richmond v. Holder*, the Second Circuit reviewed a BIA decision holding that a noncitizen who had lied about his citizenship status to avoid removal had lied for "any purpose or benefit" under state or federal law, and was thus inadmissible pursuant to INA § 212(a)(6)(C)(ii)(I), 8 U.S.C. § 1182(a)(6)(C)(ii)(I). *Richmond v. Holder*, 714 F.3d 725, 727 (2d Cir. 2013).  Because what qualified as a "purpose or benefit" was a novel question of law, the Second Circuit remanded

9

the case back to the BIA.  *Id.* at 730-31.  On remand, the BIA relied on *Kungys* to conclude that, like INA § 101(f)(6), INA § 212(a)(6)(C)(ii)(I) also requires that the noncitizen have the subjective intent tfo obtain the "purpose or benefit."  *Matter of Richmond*, 26 I. & N. Dec. 779, 784 (BIA 2016).  The BIA noted that, in INA § 212(a)(6)(C)(ii)(I), "purpose or benefit" was drafted in the disjunctive, so the words must have separate meanings.  *Id.* at 787.  It then interpreted "benefit" as something "identifiable and enumerated" in state or federal law, such as admission to the United States or obtaining a passport, but not "avoiding removal proceedings."  *Id.* at 787-88.  It then defined "purpose" to include the "avoidance of negative legal consequences," which would include removal proceedings.  *Id.* at 788.

Although we have addressed and criticized *Richmond*'s reasoning as "flawed and unclear" regarding the BIA's imposition of a materiality element in INA § 212(a)(6)(C)(ii)(I), 8 U.S.C. § 1182(a)(6)(C)(ii)(I), we have not addressed the BIA's analysis relating to the meaning of "purpose or benefit."  *Patel v. U.S. Att'y Gen.*, 917 F.3d 1319, 1325 (11th Cir. 2019) ("*Patel I*"), *vacated in part by Patel II*, 971 F.3d at 1284 (keeping intact the original panel's ruling that INA § 212(a)(6)(C)(ii)(I), 8 U.S.C. § 1182(a)(6)(C)(ii)(I), lacks a materiality element).

To the extent that Gomez argues that the BIA misapplied legal standards and misinterpreted a statute, he has raised an argument sufficient for our jurisdiction.

10

*See Patel II*, 971 F.3d at 1272, 1283-84; *Jeune*, 810 F.3d at 799.  However, on the merits, Gomez's arguments are incorrect.  First, the BIA did not implicitly find that subjective intent was not required; relying on the record, it recognized that subjective intent was a question of fact, applied the correct standard of review, and found that the IJ had not erred in finding that Gomez gave false testimony to avoid removal.  *See* 8 C.F.R. § 1003.1(d)(3)(i).  For this reason, Gomez's reliance on *Kungys* is misplaced.  The BIA did not imply that this case creates an exception to *Kungys*, as *Kungys* was clear that INA § 101(f)(6) prohibits "only those misrepresentations made with the subjective intent of obtaining immigration benefits."  *Kungys*, 485 U.S. at 780, 108 S. Ct. at 1551.  Accordingly, the BIA relied on the IJ's factfinding to make the legal conclusion that Gomez's lying to avoid removal was a lie to obtain an immigration benefit.

Second, the BIA did not make its own finding.  The IJ found that Gomez fell within INA § 101(f)(6) and that Gomez had "attempt[ed] to procure a benefit to preclude his removal," rather than simply to avoid removal; the BIA agreed.  The BIA reasoned that it was unnecessary for either Gomez or the IJ to explicitly connect the lie to avoid removal with a lie to avoid cancellation because the lie occurred at the cancellation hearing.  It relied on the facts as found by the IJ to make a legal conclusion and did not engage in any impermissible factfinding.  *See* 8 C.F.R. § 1003.1(d)(3)(i).

11

Third, Gomez is wrong in arguing that his lying to avoid removal is not an immigration benefit. Having conceded removability, the only way for him to remain in the United States was to apply for cancellation. *See* INA § 240A(b)(1), 8 U.S.C. § 1229b(b)(1). When he lied, he already had conceded removability and had applied for cancellation; he made the false statement during the only hearing that would determine whether he could stay in the United States. His conduct falls within the ordinary meaning of "any benefit" because the only way that he could avoid removal was to receive cancellation; his lie to avoid removal was synonymous with receiving cancellation, which is an immigration benefit. *See Lanier*, 631 F.3d at 1365; INA § 240A(b)(1)(B), 8 U.S.C. § 1229b(b)(1)(B).

Gomez's reliance on *Richmond* is also misplaced, as the BIA interpreted a different statute that contained additional language that is not present here. 26 I. & N. Dec. at 784. In any event, both the IJ and BIA found that Gomez had lied to obtain the benefit of cancellation, which would prevent his removal.[3]

**PETITION DENIED.**

---

[3] To the extent that Gomez argues that the BIA erred in this conclusion, we lack jurisdiction to consider it because the conclusion is not a question of law. *Patel II*, 971 F.3d at 1272, 1283-84.